| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Ma Divina Valdovinos<br>10733 Pine Avenue<br>Lynwood, CA  90262<br>Tel. No.:  (323) 854-1005 | **FILED**<br>OCT 1 0 2017<br>CLERK U.S. BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY _____ Deputy Clerk |
| ☒ *Individual appearing without attorney*<br>☐ *Attorney for:* | |

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| In re:<br><br> Ma Divina Valdovinos,<br><br><br><br><br><br>                                         Debtor(s). | CASE NO.: 2:17-bk-21079-SK<br>CHAPTER: 13<br><br>**DEBTOR'S NOTICE OF MOTION AND MOTION TO AVOID JUNIOR LIEN ON PRINCIPAL RESIDENCE**<br>**[11 U.S.C. § 506(d)]**<br><br>DATE: 11/16/2017<br>TIME:  8:30 am<br>COURTROOM: 1575 |
|---|---|

1.  **TO:**  CLEARSPRING LOAN SERVICES, INC.

2.  NOTICE IS HEREBY GIVEN that on the above date and time and in the indicated courtroom, Movant in the above-captioned matter will move this court for an order granting the relief set forth in the motion and accompanying supporting documents served and filed herewith.

3.  **Hearing Location:**

     ☒ 255 East Temple Street, Los Angeles, CA 90012          ☐ 411 West Fourth Street, Santa Ana, CA 92701
     ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367      ☐ 1415 State Street, Santa Barbara, CA 93101
     ☐ 3420 Twelfth Street, Riverside, CA 92501

4.  **Your rights may be affected.**  You should read these papers carefully and discuss them with your attorney, if you have one. (*If you do not have an attorney, you may wish to consult one.*)

5.  **Deadline for Opposition Papers:**  This motion is being heard on regular notice pursuant to LBR 9013-1. If you wish to oppose this motion, you must file a written response with the court and serve a copy of it upon the Movant or Movant's attorney at the address set forth above no less than 14 days prior to the above hearing date. If you fail to file

---

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

a written response to this Motion within such time period, the court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

6. **Hearing Date Obtained Pursuant to Judge's Self-Calendaring Procedure:** The undersigned hereby verifies that the above hearing date and time were available for this type of Motion according the judge's self-calendaring procedures.

Date: _10│9│17_

_n/a_
Printed name of law firm (if applicable)

_Ma Divina Valdovinos_
Printed name of Debtor or attorney for Debtor

Signature of Debtor or attorney for Debtor

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

December 2012                                          Page 2                                          **F 4003-2.4.JR.LIEN.MOTION**

**MOTION TO AVOID JUNIOR LIEN ON PRINCIPAL RESIDENCE [11 U.S.C. § 506(d)]**
**(DEBTOR: MA DIVINA VALDOVINOS_____)**

**NAME OF CREDITOR HOLDING JUNIOR LIEN (Respondent):** CLEARSPRING LOAN SERVICES, INC

1. **Property at Issue:** Debtor moves to avoid the junior deed of trust, mortgage or other encumbrance (Lien) encumbering the following real property (Property), which is the principal residence of debtor.

   Street address:        10733 Pine Avenue

   Unit number:           n/a

   City, state, zip code:  Lynwood, CA  90262

   Legal description of Property or document recording number (*including county of recording*):

   SEE ATTACHED EXHIBIT "A"  FOR LEGAL DESCRIPTION OF PROPERTY.

   ATTACHED HEREIN AS EXHIBIT 1.

   ☒ See attached page for legal description of Property or document recording number.

2. **Case History:**

   a. A voluntary petition under chapter ☐ 7 ☐ 11 ☐ 12 ☒ 13 was filed on (*specify petition date*):  09/11/2017_____.

   b. ☐ An Order of Conversion to chapter 13 was entered on (*specify date*): _____.

3. **Grounds for Avoidance of Junior Lien:**

   a. As of (*date of title review*) 09/18/2017_____, the Property is subject to the following liens in the amounts specified securing the debt against the Property that the Debtor seeks to have treated as indicated:

      (1) (*Name of holder of 1st lien*) OCWEN LOAN SERVICING, LLC_____ in the amount of $ 366,279.00_____.

      (2) (*Name of holder of 2nd lien*) Clearspring Loan Services, Inc_____ in the amount of $ 98,000.00_____ ☒ is ☐ is not  to be avoided;

      (3) (*Name of holder of 3rd lien*) _____ in the amount of $ _____ ☐ is ☐ is not  to be avoided;

      ☐ See attached page for additional lien(s).

      As of (*date of valuation/appraisal*) 08/26/2017_____, Property is worth no more than (*value per valuation/appraisal*) $ 332,000.00_____.

   b. As a result, each Respondent's Lien encumbering the Property is wholly unsecured.

---

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*December 2012*                        Page 3                        **F 4003-2.4.JR.LIEN.MOTION**

c. **Evidence in Support of Motion:**

(1) ☒ The amount of the lien identified in paragraph 3(a)(1) is based on (*type of evidence*)
   Mortgage statement dated 8/17/17    , attached hereto and identified as Exhibit  B  .

(2) ☒ The amount of the lien identified in paragraph 3(a)(2) is based on (*type of evidence*)
   Mortgage statement dated 7/19/17    , attached hereto and identified as Exhibit  C  .

(3) ☐ The amount of the lien identified in paragraph 3(a)(3) is based on (*type of evidence*)
   _____, attached hereto and identified as Exhibit ___ .

(4) ☒ The relative priority of the liens encumbering the Property is established by evidence attached as
   Exhibit  D  .

(5) ☒ The value of the Property from paragraph 3(b) is based on (*type of evidence*)
   Appraisal dated 09/07/2017    , attached as Exhibit  E  .

(6) ☒ Debtor submits the attached Declaration(s).

(7) ☒ Other evidence (*specify/identify supplemental evidence*):  Property needs extensive repairs,
   attached please find a property repair estimate from KF General Contractors.  , attached as Exhibit  F  .

d. **WHEREFORE, Debtor prays that this court issue an order granting this motion and establishing that:**

(1) The Property is valued at no more than (*requested value*) $  332,500.00                              .

(2) No payments are to be made on the secured claim of the Respondent, and regular mortgage maintenance
   payments are not to be made, before the Debtor's ☒ completion of the chapter 13 plan, or ☐ receipt of a
   chapter 13 discharge.

(3) Respondent's(s') claim on the junior position lien(s) shall be allowed as a nonpriority general unsecured
   claim(s) in the amount per filed Proof of Claim.

(4) The avoidance of the Respondent's(s') junior lien(s) is contingent upon:  Debtor's ☒ completion of the
   chapter 13 plan, or ☒ receipt of a chapter 13 discharge.

(5) The Respondents shall retain its/their lien(s) in the junior position for the full amount due under the
   corresponding note and lien in the event of either the dismissal of the Debtor's chapter 13 case, the
   conversion of the Debtor's chapter 13 case to any other chapter under the United States Bankruptcy Code, or
   if the Property is sold or refinanced prior to the Debtor's ☒ completion of the chapter 13 plan or ☒ receipt of
   a chapter 13 discharge.

(6) In the event that the holder of the first position lien or any senior lien on the Property forecloses on its interest
   and extinguishes the Respondent's(s') lien rights prior to the Debtor's completion of the chapter 13 plan and
   receipt of a chapter 13 discharge, the Respondent's(s') lien(s) shall attach to the proceeds greater than
   necessary to pay the senior lien, if any, from the foreclosure sale, subject to the priority of any such junior
   lien(s).

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*December 2012*                                    Page 4                              **F 4003-2.4.JR.LIEN.MOTION**

e.   ☐  See attached continuation page for additional provisions.

Date:  10/09/2017                                   Respectfully submitted,

                                                   _____
                                                   Signature of Debtor or attorney for Debtor

                                                   Ma Divina Valdovinos,
                                                   Printed name of Debtor or attorney for Debtor

---

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
10733 Pine Avenue, Lynwood, CA 90262

A true and correct copy of the foregoing document entitled: **DEBTOR'S NOTICE OF MOTION AND MOTION TO AVOID JUNIOR LIEN ON PRINCIPAL RESIDENCE [11 U.S.C. § 506(d)] AND** ORDER MOTION TO AVOID JUKOR LIEN PRINCIPAL RESIDENCE
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**:
On (*date*) 10/10/2017, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

1. Honorable Judge Sandra Klein, 255 E. Temple Street, Suite 1582, Courtroom 1575,  Los Angeles, CA 90012
2. United States Banruptcy Court, Central District, 255 East Temple Street, Los Angeles, CA  90012.
3. Kathy A. Dockery, Chapter 13 Trustee, 801 Figueroa Street, Suite 1850, Los Angeles, CA  90012.
4. Edward, A. Treder, Esq., BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP, 20955 Pathfinder Road, Suite 300, dIAMOND bAR, cA  91765

☐ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 10/10/2017 | Carlos Sanchez | |
| *Date* | *Printed Name* | *Signature* |

---

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**SERVED BY UNITED STATES MAIL, CERTIFIED MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
*(Attached page to Proof of Service of Document-please include any additional or alternative addresses and attach additional pages if needed)*
*(Certified Mail required for service on a national bank.)*

| | Address from: | Delivery Method |
|---|---|---|
| 1st lienholder *(name and address)*<br><br>OCWEN LOAN SERVICING, LLC<br><br>2711 Centerville Rd., Suite 400<br><br>Wilmington, DE  19808 | ☐ Proof of claim  ☐ Secretary of State<br>☐ FDIC website  ☒ Other *(specify):*<br><br>https://www.ocwencustomers.com -<br><br>Corporation Service Compahy | ☐ United States mail<br>☒ Certified mail –<br>Tracking # _____<br>☐ Overnight mail –<br>Tracking # _____<br>Carrier Name: _____ |
| 1st lienholder *(name)* and Agent for Service of Process *(name and address)* | ☐ Proof of claim  ☒ Secretary of State<br>☐ FDIC website  ☐ Other *(specify):* | ☐ United States mail<br>☒ Certified mail –<br>Tracking # _____<br>☐ Overnight mail –<br>Tracking # _____<br>Carrier Name: _____ |
| 1st lienholder *(name)* and Servicing Agent *(name and address)*<br>Clearspring Loan Services, Inc.,<br>18451 N. Dallas Parkway, #100<br>Dallas, TX  75287 | ☐ Proof of claim  ☐ Secretary of State<br>☐ FDIC website  ☒ Other *(specify):*<br><br>http://www.clearspringls.com<br><br>coporate info | ☐ United States mail<br>☒ Certified mail –<br>Tracking # _____<br>☐ Overnight mail –<br>Tracking # _____<br>Carrier Name: _____ |

| | Address from: | Delivery Method |
|---|---|---|
| 2nd lienholder *(name and address)* | ☐ Proof of claim  ☒ Secretary of State<br>☐ FDIC website  ☐ Other *(specify):* | ☐ United States mail<br>☐ Certified mail –<br>Tracking # _____<br>☐ Overnight mail –<br>Tracking # _____<br>Carrier Name: _____ |
| 2nd lienholder *(name)* and Agent for Service of Process *(name and address)* | ☐ Proof of claim  ☐ Secretary of State<br>☐ FDIC website  ☐ Other *(specify):* | ☐ United States mail<br>☐ Certified mail –<br>Tracking # _____<br>☐ Overnight mail –<br>Tracking # _____<br>Carrier Name: _____ |
| 2nd lienholder *(name)* and Servicing Agent *(name and address)* | ☐ Proof of claim  ☐ Secretary of State<br>☐ FDIC website  ☐ Other *(specify):* | ☐ United States mail<br>☐ Certified mail –<br>Tracking # _____<br>☐ Overnight mail –<br>Tracking # _____<br>Carrier Name: _____ |

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*December 2012*                               Page 7                        **F 4003-2.4.JR.LIEN.MOTION**

| 3rd lienholder (name and address) | Address from:<br>☐ Proof of claim<br>☐ FDIC website | Delivery Method<br>☐ United States mail<br>☐ Certified mail –<br>   Tracking # _____<br>☐ Overnight mail –<br>   Tracking # _____<br>   Carrier Name: _____ |
| 3rdd lienholder (name) and Agent for Service of Process (name and address) | Address from:<br>☐ Proof of claim<br>☐ FDIC website | Delivery Method<br>☐ United States mail<br>☐ Certified mail –<br>   Tracking # _____<br>☐ Overnight mail –<br>   Tracking # _____<br>   Carrier Name: _____<br>   _____ |
| 3rd lienholder (name) and Servicing Agent (name and address) | Address from:<br>☐ Proof of claim<br>☐ FDIC website | Delivery Method<br>☐ United States mail<br>☐ Certified mail –<br>   Tracking # _____<br>☐ Overnight mail –<br>   Tracking # _____<br>   Carrier Name: _____<br>   _____ |

| Alternative/additional address *(name and address)* | Address from:<br>☐ Proof of claim  ☐ Secretary of State<br>☐ FDIC website  ☐ Other (*specify*): | Delivery Method<br>☐ United States mail<br>☐ Certified mail –<br>   Tracking # _____<br>☐ Overnight mail –<br>   Tracking # _____<br>   Carrier Name: _____ |
| Alternative/additional address *(name and address)* | Address from:<br>☐ Proof of claim  ☐ Secretary of State<br>☐ FDIC website  ☐ Other (*specify*): | Delivery Method<br>☐ United States mail<br>☐ Certified mail –<br>   Tracking # _____<br>☐ Overnight mail –<br>   Tracking # _____<br>   Carrier Name: _____<br>   _____ |

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Ma Divina Valdovinos
10733 Pine Avenue
Lynwood, CA 90262
Tel. No.: (323) 854-1005

In Pro Per

# UNITED STATES BANKRTUPCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ma Divina Valdovinos, | ) Case No.: 2:17-bk-21079-SK |
| | ) **CHAPTER 13** |
| Debtor, | ) |
| | ) **DECLARATION OF MA DIVINA** |
| Ma Divina Valdovinos, | ) **VALDOVINOS IN SUPPORT OF MOTION** |
| | ) **TO EXTINGUISH THE SECOND DEED OF** |
| | ) **TRUST (LIEN) OF CLEARSPRING LOAN** |
| Movant, | ) **SERVICES** |
| | ) |
| v. | ) |
| | ) |
| Clearspring Loan Services, Inc.; | ) |
| | ) |
| Respondent, | ) |

I, Ma Divina Valdovinos, do hereby declare that all of the following is true and correct to the best of my personal knowledge and if called upon as a witness I could and would competently testify to the truthfulness of all of the below statements.

I am the Debtor in the instant bankruptcy proceeding, case number 2:17-bk-21079-SK.

I filed the above bankruptcy chapter 13 case including my principle residence located at 10733 Pine Avenue, Lynwood, CA 90262 ("The Property").

The Property is worth no more than $332,000.00, based on a licensed California appraiser's Residential Appraisal Report reflecting current value.

The lien of the First Deed of Trust is currently held by OCWEN Loan Servicing. The First Deed of Trust is currently at least $366,279.08, attached hereto as Exhibit "B" is an original of said mortgage statement dated August 17, 2017.

The Second Deed of Trust is currently held by Clearspring Loan Services. The amount owing on the Second Deed of Trust is approximately $98,000.00, based on a mortgage statement mailed by Clearspirng Loan Services on July 19, 2017, attached hereto as Exhibit "C" is said original mortgage statement.

I declare under penalty of perjury under the laws of the State of California and United States that the foregoing is true and correct.

Executed on October 09, 2017, at Lynwood, California.

Sincerely,

Ma Divina Valdovinos
Debtor

Ma Divina Valdovinos
10733 Pine Avenue
Lynwood, CA  90262
Tel. No.:  (323) 854-1005

In Pro Per

UNITED STATES BANKRTUPCY COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ma Divina Valdovinos, | Case No.:  **2:17-bk-21079-SK** |
| | **CHAPTER 13** |
| Debtor, | **DECLARATION OF JOSE A. PINZON  IN** |
| | **SUPPORT OF MOTION TO EXTIGUINSH** |
| Ma Divina Valdovinos, | **SECOND DEED OF TRUST (LIEN) OF** |
| | **CLEARSPRING LOAN SERVICES** |
| Movant, | |
| v. | |
| Clearspring Loan Services, Inc.; | |
| Respondent, | |

I, JOSE A. PINZON, a licensed appraiser, do hereby declare that all of the following is

true and correct to the best of my personal knowledge and if called upon as a witness I could and

would competently testify to the truthfulness of all of the below statements.

1.   I am making this declaration in support of the Motion to Extinguish Second Deed of

Trust (Lien) of **CLEARSPRING LOAN SERVICES.**

2.   On or about August 26, 2017, I appraised the real property located 10733 Pine Avenue,

Lynwood, CA  90262 (hereinafter the "Subject Property").

Pursuant to my appraisal, the value of the Subject Property on or about September 06, 2017, was valued at $332,000.00. Attached hereto as Exhibit "E" is a true and correct copy of my appraisal of the Subject Property

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed on October 09, 2017, North Hills, California.

_____
Jose A. Pinzon

| Attorney or Party Name, Address, Telephone & FAX Nos.,' State Bar'No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Ma Divina Valdovinos<br>10733 Pine Avenue<br>Lynwood, CA  90262<br>Tel. No.:  (323) 854-1005<br><br><br>☒ *Debtor(s) appearing without attorney*<br>☐ *Attorney for:* | |

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA –LOS ANGELES DIVISION

| In re:<br><br>Ma Divina Valdovinos | CASE NO.: 2:17-bk-21079-SK<br>CHAPTER: 13 |
|---|---|
| | **ORDER  ☐  GRANTING  ☐  DENYING<br>MOTION TO AVOID JUNIOR LIEN<br>ON PRINCIPAL RESIDENCE<br>[11 U.S.C. § 506(d)]** |
| | DATE: 11/16/2017<br>TIME: 8:30 a.m.<br>COURTROOM: 1575<br>PLACE: 255 East Temple Street, Los Angeles, CA  90012 |
| Debtor(s). | |

**Creditor Holding Junior Lien** *(name)*: CLEARSPRING LOAN SERVICES, INC.

1. The Motion was:    ☐ Opposed    ☐ Unopposed    ☐ Settled by stipulation

2. The Motion affects the junior trust deed(s), mortgage(s), or other lien(s) encumbering the following real property (Subject Property), which is the principal residence of Debtor:

   *Street Address*:  10733 Pine Avenue
   *Unit Number*:  n/a
   *City, State, Zip Code*:  Lynwood, CA  90262

Legal description or document recording number (*including county of recording*):

☒ See attached page.

---

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

3.  The Subject Property is subject to the following deed(s) of trust, mortgage(s) or other lien(s) in the amounts specified securing the debt against the Subject Property, which will be treated as indicated:

    a.  Holder of 1st lien *(name)* <u>OCWEN LOAN SERVICING, LLC</u> in the amount of $ <u>366,279.00</u>.

    b.  Holder of 2nd lien *(name)* <u>CLEARSPRING LOAN SERVICES, INC.</u> in the amount of $ <u>98,000.00</u>. ☒ is ☐ is not    to be avoided;

    c.  Holder of 3rd lien *(name)* _____ in the amount of $ _____. ☐ is ☐ is not    to be avoided;

    ☐ See attached page for any additional encumbrance(s).

4.  The Motion is:

    a.  ☐ DENIED ☐ with ☐ without    prejudice, on the following grounds:

        (1) ☐  Based upon the findings and conclusions made on the record at the hearing

        (2) ☐  Unexcused non-appearance by Movant

        (3) ☐  Lack of proper service

        (4) ☐  Lack of evidence supporting motion

        (5) ☐  Other *(specify)*:

    b.  ☐ GRANTED on the following terms:

        (1)  The Subject Property is valued at no more than *(determined value)* $ _____ based on adequate evidence.

        (2)  This avoidance of the respondent's junior lien is effective upon: ☐ completion of the chapter 13 plan, or ☐ receipt of a chapter 13 discharge in this case.

        (3)  Before the discharge, no payments are to be made on the secured claim of the junior lienholder; maintenance payments are not to be made.

        (4)  Any filed proof of claim of the junior lienholder is to be treated as an unsecured claim and is to be paid through the plan pro rata with all other unsecured claims.

        (5)  The junior lienholder's claim on the deed of trust, mortgage or lien shall be allowed as a non-priority general unsecured claim in the amount per the filed Proof of Claim.  The junior lienholder is not required to, but may file an amended Proof of Claim listing its claim as an unsecured claim to be paid in accordance with the Debtor's chapter 13 plan.  If an amended claim is not filed, the trustee may treat any claim on the debt (secured or unsecured) filed by the junior lienholder as unsecured upon entry of this order.

        (6)  The avoidance of the junior lienholder's deed of trust, mortgage or lien is contingent upon: ☐ completion of the chapter 13 plan, or ☐ receipt of a chapter 13 discharge.

        (7)  The junior lienholder shall retain its lien in the junior position for the full amount due under the corresponding note and deed of trust, mortgage or lien in the event of either the dismissal of the Debtor's chapter 13 case, the conversion of the Debtor's chapter 13 case to any other chapter under the Bankruptcy Code, or if the Subject Property is sold or refinanced prior to the Debtor's ☐ completion of the chapter 13 plan, or ☐ receipt of a chapter 13 discharge.

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*December 2013*    Page 2    **F 4003-2.4.JR.LIEN.ORDER**

(8)     In the event that the holder of the first deed of trust or any senior lien on the Subject Property forecloses on its interest and extinguishes the junior lienholder's lien rights prior to the Debtor's ☐ completion of the chapter 13 plan, or ☐ receipt of a chapter 13 discharge, the junior lienholder's lien shall attach to the proceeds greater than necessary to pay the senior lien, if any, from the foreclosure sale.

(9)     ☐  See attached continuation page for additional provisions.

**###**

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*December 2013*                    Page 3                    **F 4003-2.4.JR.LIEN.ORDER**

## EXHIBIT "A"

THE SOUTHERLY 50 FEET OF THE NORTHERLY 83.50 FEET OF THOSE PORTIONS OF LOTS 6 AND 7 OF TRACT
NO. 5103, IN THE CITY OF LYNWOOD, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP
RECORDED IN BOOK 53 PAGE(S) 55 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.
LYING WESTERLY OF THE CENTER  LINE OF PINE AVENUE AS SHOWN ON THE MAP OF TRACT NO. 10269,
RECORDED IN BOOK 221 PAGES 20 AND 21 OF MAPS,   IN SAID COUNTY RECORDERS OFFICE, AND THE
EASTERLY OF THE NORTHERLY PROLONGATION OF THE EASTERLY LINE OF LOT 1, BLOCK 8 OF SAID TRACT
NO. 10269.

EXCEPT THEREFROM THAT PORTION INCLUDED WITHIN  THE LINES OF THE PARCEL OF  LAND DESCRIBED IN
THE DEED TO  THE CITY OF LYNWOOD, RECORDED IN BOOK 16868, PAGE 326 OF OFFICIAL RECORDS OF SAID
COUNTY.



**OCWEN**

Ocwen Loan Servicing, LLC
PO Box 24738
West Palm Beach, FL 33416-4738

**Mortgage Account Statement**

www.ocwencustomers.com

5/2/17 2:03 PM 3  6021742 20170818 MH6AC106 OCWSTMT 1 oz DDM MH6AC100001 146951 MS

MERCEDES COBARRUBIAS
10733 PINE AVE
LYNWOOD CA 90262-2328



| | |
|---|---|
| Property Address | 10733 Pine Ave |
| | Lynwood, CA 90262-2328 |

| | |
|---|---|
| Statement Date | 08/17/17 |
| Account Number | 7190446612 |
| Payment Due Date | 09/01/17 |
| **Amount Due** | **$1,561.84** |

If payment is received after 09/16/17, a $50.65 late fee will be charged.

| | |
|---|---|
| Customer Care | 800-746-2936 |
| Insurance | 866-317-7661 |

## Account Information

| | |
|---|---|
| Principal Balance* | $366,279.08 |
| Regular Principal Balance | $318,342.42 |
| SAM Waived Balance | $47,936.66 |
| Escrow Balance | $1,187.17 |
| Maturity Date | July 1, 2036 |
| Interest Rate | 2.03010% |
| Prepayment Penalty | No |

\* This is the Principal Balance only, not the amount required to pay the loan in full.

## Explanation of Amount Due

| | |
|---|---|
| Principal | $474.45 |
| Interest | $538.56 |
| Escrow | $548.83 |
| **Total Regular Payment** | **$1,561.84** |
| **Total Amount Due** | **$1,561.84** |

## Activity Since Last Statement (07/18/17 to 08/17/17)

| | | | | | | How Payments & Charges were Applied | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Date Applied | Date Received | Description | Transaction Total | Principal | Interest | Escrow | Optional Products | Late Charges | Fees/ Other | Unapplied Funds |
| 07/31/17 | 07/31/17 | Insurance Disbursement AMERICAN SECURITY GROUP | -$72.34 | | | -$72.34 | | | | |
| 08/16/17 | 08/15/17 | Payment | $1561.84 | $473.65 | $539.36 | $548.83 | | | | |

## Past Payments Breakdown

| | Paid Since Last Statement | Paid Year to Date |
|---|---|---|
| Principal | $473.65 | $4,782.32 |
| Interest | $539.36 | $3,802.34 |
| Escrow (Taxes & Insurance) | $548.83 | $3,637.06 |
| Fees/Other Charges | $.00 | $.00 |
| Unapplied Funds** | $.00 | $.00 |
| Total | $1,561.84 | $12,221.72 |

## Special Notices

## Important News

!Attention Military Families! We are committed to doing what we can to support our customers in the military.  If you or a member of your family are in the military and are experiencing a financial hardship, please contact us at (800) 746-2936 or visit us at www.ocwencustomers.com to discuss your situation and identify possible alternatives.



See reverse side for important information and state-specific disclosures.

## Important Phone Numbers and Hours

Our automated telephone service will help you get fast and confidential answers to your questions. Be sure to have the Ocwen account number and social security number available for identification. You can call 24 hours a day, 7 days a week. Representatives are available to assist you during the following hours:

**Customer Care Center:** 800-746-2936 Monday-Friday: 8:00 am to 9:00 pm, Saturday: 8:00 am to 5:00 pm and Sunday: 9:00 am to 9:00 pm ET
**Bankruptcy Customer Care Center:** 888-554-6599 Monday-Friday: 8:00 am to 9:00 pm ET
**Homeowners Insurance:** 866-317-7661 Monday-Friday: 8:00 am to 9:00 pm, Saturday: 8:00 am to 5:00 pm and Sunday: 9:00 am to 9:00 pm ET
Special Number for the Hearing Impaired: 800-735-2943

## Payment and Correspondence Addresses

**Inquiries** — General inquiries/correspondence should be mailed separately from any account payments:

| | | | |
|---|---|---|---|
| **Research Department**\*\* | **Regular Payments**\* | **HELOC Closure Requests** | **Express Payments** |
| PO Box 24736 | PO Box 660264 | PO Box 24642 | Ocwen Loan Servicing, LLC - Box #660264 |
| West Palm Beach, FL 33416-4736 | Dallas, TX 75266-0264 | West Palm Beach, FL 33416-4642 | 1010 W. Mockingbird Ln., Suite 100 |
| | | | Dallas, TX 75247 |
| **Insurance Department** | **Insurance Claims** | **Tax Bills** | |
| PO Box 6723 | PO Box 630497 | PO Box 24665 | |
| Springfield, OH 45501-6723 | Irving, TX 75063-9404 | West Palm Beach, FL 33416-4665 | |

*Please address all correspondence to Ocwen Loan Servicing, LLC to the attention of the appropriate department. Be sure to include the Ocwen account number, name and property address.*

\* All checks should be made payable to Ocwen Loan Servicing, LLC. Do not send correspondence with any payment and ensure that the Ocwen account number, name and property address are written on the front of the check or money order.

\*\* This address must be used for all qualified written requests, notices of error, and/or requests for information.

## Ocwen Fee Structure*

| Loan Documents | | Payments | |
|---|---|---|---|
| Collateral (Mortgage, Note and Riders) | **FREE** | Website (pay before or within 10 business days of due date) | **FREE** |
| Individual documents | **FREE** | Website (pay 10 business days or more after due date) | up to $10.00 |
| **Payment History** (free on www.ocwencustomers.com) | up to $5.00 | Automated Phone System | up to $12.00 |
| **Verification of Mortgage** (free on www.ocwencustomers.com) | up to $10.00 | Agent Assistance | up to $19.50 |
| **Amoritization Schedule** | **FREE** | Returned Check Fee | up to $40.00 |

*These fees are subject to change and may not apply in all instances, depending upon applicable state laws.*

## Convenient Payment Options

**Online Payment Services** — Pay mortgage bills and view mortgage account statements online! To get started simply register for Account Access at www.ocwencustomers.com, log-in, and follow the enrollment instructions.

**ACH (Automated Payments)** — Automatic monthly payment withdrawals can now be easily setup and managed right from our website at www.ocwencustomers.com. Payments can be automatically drafted from a designated bank account on a monthly basis saving time and money, or as a one-time draft, that is free if drafted within ten days of the due date.

**Pay by Phone** — For information to use this quick and convenient service call the Customer Care number listed above. Please have the bank routing number and bank account number available. Fees may apply.

**Pay via Western Union® Quick Collect®** — To use this payment option, find the nearest location by calling 1-800-238-5772 or visiting www.westernunion.com and clicking on "Find A Location". The city code is "Ocwen" and the state is "FL". All payments should be made to "OCWEN" and provide the loan number.

**Pay via MoneyGram® and Express Payments®** — To find the nearest location, call 1-800-Moneygram or visit www.moneygram.com and click on "Locate MoneyGram Agent". At the agent location, please provide the clerk with the loan number, Receive Code 2355, the Company Name "OCWEN", the City Code "ORLANDO", and the State Code "FLORIDA". MoneyGram® and Express Payment® are registered marks of MoneyGram Payment Systems, Inc.

## Important Information

**Important Notice** — This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.

**Payment Processing** — Payments received after 5:00 p.m. CST are considered received as of the next business day.

**Electronic Debit** — When a check is provided as payment, we are authorized by the payor of the check either to use information from the check to make a one-time electronic funds transfer from the designated account or to process the payment as a check transaction. When we use information from the check to make an electronic funds transfer, funds may be withdrawn from the designated account as soon as the same day the payment is received, and you will not receive the check back from the designated financial institution.

**Important Credit Reporting Notification** — We may report information about the account to credit bureaus. Late payments, missed payments, or other defaults on the account may be reflected in your credit report.

**Optional Product Information** — Failure to pay a monthly charge for an Optional Product billed under "Optional Products" will not cause the mortgage account to be in default. Please call the Customer Care number listed above if you have any questions or to cancel the Optional Product enrollment.

**Housing Counselor Information** — If you are experiencing financial difficulties and would like counseling or assistance, you can contact the U.S. Department of Housing and Urban Development (HUD). For a list of homeownership counselors or counseling organization in your area, go to http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or call 800-569-4287.

## Important Bankruptcy Information

**If you have any questions regarding this statement, or do not want Ocwen to send you monthly statements in the future, please contact us at 1-888-554-6599. Bankruptcy payments from the Trustee should be mailed to Ocwen Loan Servicing, LLC, PO Box 24781, West Palm Beach, FL 33416-4781.**

## State Disclosures

**California Property Owners** — Additional accountings can be requested pursuant to Section 2954 of the California Civil Code

02-1409-048081717(3/17)



# MONTHLY LOAN STATEMENT

**ClearSpring**
P.O. Box 4869, Dept. #446
Houston, TX 77210
1-866-660-5804

| | |
|---|---|
| Statement Date | 07/19/2017 |
| Loan Number | 1308293 |
| Property Address | 10733 Pine Ave |
| | Lynwood, CA 90262 |

| | |
|---|---|
| Next Payment Due Date | 09/01/2008 |
| **Total Amount Due On 08/01/2017** | **$99,781.15** |
| Late charge if payment received after 08/17/2017: | $0.00 |

| | |
|---|---|
| Outstanding Principal Balance | $98,000.00 |
| Prepayment Penalty | No |
| Maturity Date | 10/01/2036 |
| Suspense Account Balance* | $0.00 |

MERCEDES COBARRUBIAS
10733 PINE AVE
LYNWOOD, CA 90262

*Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account. If you pay the balance of a partial payment, the funds will then be applied to your mortgage.*

## IMPORTANT MESSAGES

THIS COMMUNICATION IS FROM A DEBT COLLECTOR.
THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

If you are in active bankruptcy or received a discharge which included this debt, this communication is not intended to be
and does not constitute an attempt to reaffirm or to collect a debt against you personally and is for informational purposes only.

LOGIN TO WWW.CLEARSPRINGLS.COM OR CALL 1-866-660-5804
FOR INFORMATION ON YOUR ACCOUNT, INCLUDING  PAYMENT HISTORY, LOAN BALANCES AND STATEMENTS.

To find free or low-cost HUD certified housing counseling agencies in your area,
please call 1-800-569-4287 or visit the HUD website at www.hud.gov.

### Explanation of Amount Due

| | |
|---|---|
| Principal | $0.00 |
| Interest | $918.75 |
| Escrow (Taxes and/or Insurance) | $0.00 |
| **Monthly Payment Amount** | **$918.75** |

| | |
|---|---|
| Fees and/or Charges Assessed | |
| Since Date of Last Statement | $0.00 |
| Outstanding Late Charges | $0.00 |
| Past Due Payment | $97,387.50 |
| Suspense Balance | ($0.00) |
| Other Fees | $1,474.90 |
| **Total Amount Due** | **$99,781.15** |

### Interest Rate Information

| | |
|---|---|
| Interest Rate | 11.25000 |
| Next Interest Rate Change | N/A |

### Past Payments Breakdown

| Payment Elements | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest** | $0.00 | $0.00 |
| Escrow (Taxes and/or Insurance) | $0.00 | $0.00 |
| Fees/Late Charges | $0.00 | $0.00 |
| Suspense Account | $0.00 | $0.00 |
| **Total** | **$0.00** | **$0.00** |

**This information should not be used for tax purposes.  If you have tax related questions please contact your tax advisor.*

***Your normal monthly payment amount is $918.75*

Please detach and return the bottom portion of this statement with your payment. **WRITE YOUR LOAN NUMBER ON YOUR CHECK.**



P.O. Box 4869, Dept. #446
Houston, TX 77210
1-866-660-5804

**MERCEDES COBARRUBIAS**

| | |
|---|---|
| Statement Date | 07/19/2017 |
| Loan Number | 1308293 |
| Due Date | 08/01/2017 |
| **Total Amount Due** | **$99,781.15** |

MERCEDES COBARRUBIAS
10733 PINE AVE
LYNWOOD, CA 90262

| | |
|---|---|
| Current Payment Due | $ _____ |
| Late Charge | $ _____ |
| Additional Principal | $ _____ |
| Additional Escrow | $ _____ |
| Other | $ _____ |
| **Total Amount Enclosed** | $ _____ |

CLSP1707208650.001703.01.01.00000


Exhibit C

If you would like to request information, have questions about your loan, address changes, notify us of error, or share any concerns you may have about the servicing of your loan, please contact us at: ClearSpring Loan Services, Inc., 18451 North Dallas Parkway, Suite 100, Dallas, TX 75287. Please include your loan number on all correspondence.

---

**Disclosures**

**For California Residents:** As required by law, you are hereby notified that a negative credit report reflecting on your credit records may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

**For New York Residents:** The debtor may file complaints about the servicer and obtain further information from the New York Banking Department by calling the Department's Consumer Help Unit at 1-800-342-3736 or by visiting the Department's website at www.banking.state.ny.uc.

**Servicemembers Civil Relief Act:** The Servicemembers Civil Relief Act (SCRA) may offer protection or relief to members of the military who have been called to active duty. If either you have been called to active duty, or you are the spouse, registered domestic partner, partner in a civil union, or financial dependant of a person who has been called to active duty, and you haven't yet made us aware of your status, please contact our Customer Service Center at 1-866-660-5804 or fax your Active Duty Orders to 1-888-699-0811, attention SCRA.

---

**\*\*Delinquency Notice\*\***

**You are late on your mortgage payments.** Our records indicate that you became delinquent on 09/01/2008. As of 07/19/2017, you are 3,243 days delinquent on your mortgage loan. Failure to bring your loan current may result in fees, foreclosure, and possibly the loss of your home.

*Recent Account History:*
Payments through 02/01/2017: $0.00 received; $92,793.75 remains past due
Payments through 03/01/2017: $0.00 received; $93,712.50 remains past due
Payments through 04/01/2017: $0.00 received; $94,631.25 remains past due
Payments through 05/01/2017: $0.00 received; $95,550.00 remains past due
Payments through 06/01/2017: $0.00 received; $96,468.75 remains past due
Payments through 07/01/2017: $0.00 received; $97,387.50 remains past due

**Total Amount Due: $99,781.15**
  **Note: You must pay this amount to bring your loan current.**

**If You Are Experiencing Financial Difficulty:** See 'Important Messages' for information about mortgage counseling assistance.

\*\*\*Please be advised, the first notice in the foreclosure process has been filed.

| Date | Description | | Charges | Payments |
| --- | --- | --- | --- | --- |

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:
**Resolve Trustee Services, LLC**
**5900 South Lake Forest Drive, Suite 380**
**McKinney, Texas 75070**

THIS IS TO CERTIFY THAT THIS IS A FULL, TRUE AND
CORRECT COPY OF THE ORIGINAL RECORDED
IN THE OFFICE OF LOS ANGELES COUNTY

RECORDING FEE:  **$34.00**

RECORDED ON:  **May 15, 2017**

AS DOCUMENT NO:  **20170535454**

BY:  **s/ VANGIE ORTEGA**

SERVICELINK TITLE COMPANY

---

TS No.: **2017-00083**      Loan No.: **xxx8293**      APN: **6192-022-002**

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED

注：本文件包含一个信息摘要

참고사항: 본 첨부 문서에 정보 요약서가 있습니다

NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO

TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP

LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

## IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **$99,484.43** as of **5/9/2017**, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things. (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by



Exhibit C

TS No.: **2017-00083**    Loan No.: **xxx8293**

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**Clearspring Loan Services as Attorney-In-Fact for SRP 2012-4, LLC
C/O Resolve Trustee Services, LLC
5900 South Lake Forest Drive, Suite 380
McKinney, Texas 75070
Phone: (214) 449-4785**

**If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.**

## Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN:  That **Resolve Trustee Services, LLC** is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated **9/1/2006**, executed by **Mercedes Cobarrubias, a single woman,** as Trustor, to secure certain obligations in favor of **Affiliated Funding Corporation, A Nevada Corporation,** as beneficiary, recorded **9/26/2006**, as Instrument No. **06 2132395**, in Book , Page, of Official Records in the Office of the Recorder of **Los Angeles** County, California describing land therein as: As more fully described on said Deed of Trust.

Including one **NOTE(S) FOR THE ORIGINAL** sum of **$98,000.00,** that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the Beneficiary; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:
    **Installment of Principal and Interest plus impounds and/or advances which became due on 9/1/2008 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable.**
    That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

**THE BENEFICIARY OR BENEFICIARY'S AUTHORIZED AGENT HAS COMPLIED WITH CALIFORNIA CIVIL CODE SECTION 2923.5 AND/OR 2923.55. SEE ATTACHED DECLARATION HERETO AND MADE A PART HEREOF**

Dated: 5/9/2017                    Resolve Trustee Services, LLC

EXHIBIT A ATTACHED        BY: _____
                                **Rick Snoke**

P.O. Box 23159
San Diego, CA 92193-3159

IMPORTANT INFORMATION
ENCLOSED



(11) 969 0024 8599 5405 9

Mailed On:            5/26/2017
Mailing Number:       0000228-01
Reference Number:     2017-00083        ClientID:  Resolve_000379  FC

MA  DIVINA VALDOVINOS, AS  CONSEVATOR
10733 PINE AVENUE
LYNWOOD, CA  90262

Document Images

▲                  **This page is part of your document - DO NOT DISCARD**                  ▲

**06 1382629**

**RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
06/23/06 AT 08:00am**

**TITLE(S) :** _____

▲                                                                                    ▲



L E A D   S H E E T

**FEE**                                                                              D.T.T.

| FEE $ | 6 N |
| DAF $ | 2 |
| C-20 |  |

NOTIFICATION SENT $4 ◎

**CODE
20**

**CODE
19**

**CODE
9____**

**Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.**        **Number of AIN's Shown**

▲                  **THIS FORM IS NOT TO BE DUPLICATED**                  ▲

PRIORITY TITLE

Prepared On  09-19-2017

PRIORITY TITLE

© 2017 Corel ogic  All rights reserved

Exhibit D

**Document Images**

9724264

Recording Requested By:
AFFILIATED FUNDING CORPORATION

**TICOR TITLE CO**
**GLENDALE**

And After Recording Return To:
AFFILIATED FUNDING CORPORATION
5 HUTTON CENTER DRIVE STE.#1100
SANTA ANA, CALIFORNIA 92707
Loan Number: 106001888200

06 1382629

6192-022-002

00/23/90

——— [Space Above This Line For Recording Data] ———

## DEED OF TRUST

MIN: 1000827-1060018882-8

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)  "Security Instrument" means this document, which is dated   JUNE 7, 2006          , together with all Riders to this document.
(B)  "Borrower" is   MERCEDES COBARRUBIAS, A SINGLE WOMAN


Borrower is the trustor under this Security Instrument.
(C)  "Lender" is   AFFILIATED FUNDING CORPORATION

Lender is a   NEVADA CORPORATION                                          organized
and existing under the laws of   CALIFORNIA
Lender's address is   5 HUTTON CENTER DRIVE STE.#1100, SANTA ANA,
CALIFORNIA 92707

(D)  "Trustee" is   TICOR TITLE COMPANY
500 N CENTRAL AVE 500, GLENDALE, CALIFORNIA 91203

(E)  "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F)  "Note" means the promissory note signed by Borrower and dated   JUNE 7, 2006
The Note states that Borrower owes Lender   THREE HUNDRED NINETY-TWO THOUSAND AND
00/100                                         Dollars (U.S. $ 392,000.00     ) plus interest.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS        DocMagic ℰ𝔉𝔬𝔯𝔪𝔰 800-649-1362
Form 3005 01/01                              Page 1 of 14                                       www.docmagic.com

Ca3005.mzd

Prepared On  09/19/2017

PRIORITY
TITLE

© 2017 CoreLogic. All rights reserved.

**Document Images**

Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than JULY 1, 2036

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | | |
|---|---|---|---|
| ☒ | Adjustable Rate Rider | ☐ | Planned Unit Development Rider |
| ☐ | Balloon Rider | ☐ | Biweekly Payment Rider |
| ☐ | 1-4 Family Rider | ☐ | Second Home Rider |
| ☐ | Condominium Rider | ☐ | Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's

**06 1382629**

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                    Page 2 of 14

DocMagic *ℰℱℴℛ𝓂ℴ* 800-649-1362
www.docmagic.com

Ca3005.mzd

**06 1382629**

Prepared On: 09/19/2017

PRIORITY TITLE

© 2017 CoreLogic. All rights reserved.

**Document Images**

covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY                    of              LOS ANGELES                :
[Type of Recording Jurisdiction]                                    [Name of Recording Jurisdiction]
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 6192-022-002

which currently has the address of    10733 PINE AVENUE
                                                              [Street]

LYNWOOD                        , California      90262        ("Property Address"):
[City]                                                          [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS    *DocMagic* ☎️ 800-649-1362
Form 3005 01/01                                  Page 3 of 14                                  www.docmagic.com

Cal3005.mad

**06  1382629**

PRIORITY TITLE                                                                  Prepared On  09/19/2017

**PRIORITY TITLE**

© 2017 CoreLogic. All rights reserved

**Document Images**

obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

   **2.  Application of Payments or Proceeds.**  Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:  (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3.  Such payments shall be applied to each Periodic Payment in the order in which it became due.  Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

   If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge.  If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full.  To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.  Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

   Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

   **3.  Funds for Escrow Items.**  Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for:  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items."  At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item.  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section.  Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items.  Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time.  Any such waiver may only be in writing.  In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require.  Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9.  If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

   Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

   The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS   *DocMagic eForms* 800-649-1362
Form 3005 01/01                      Page 4 of 14                                      www.docmagic.com

06 1382629

Prepared On  09/19/2017

**PRIORITY TITLE**

© 2017 CoreLogic  All rights reserved

Document Images

shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  **Charges; Liens.**  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any.  To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.  If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien.  Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.  **Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance.  This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires.  What Lender requires pursuant to the preceding sentences can change during the term of the Loan.  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably.  Lender may require Borrower to pay, in connection with this Loan, either:  (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification.  Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.  Lender is under no obligation to purchase any particular type or amount of coverage.  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS    *DocMagic* *eⓇforms* 800-649-1362
Form 3005 01/01                    Page 5 of 14                              www.docmagic.com

06  1382629

Prepared On : 09-19-2017

PRIORITY TITLE

© 2017 CoreLogic. All rights reserved

**Document Images**

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  Occupancy.  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  Preservation, Maintenance and Protection of the Property; Inspections.  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                    Page 6 of 14

DocMagic eFormns 800-649-1362
www.docmagic.com

06  1382629

Ca3005.mzd

PRIORITY TITLE

Prepared On : 09-19-2017

PRIORITY TITLE

© 2017 CoreLogic. All rights reserved.

**Document Images**

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                    Page 7 of 14

DocMagic *EFStreetS* 800-649-1362
www.docmagic.com

06  1382629

Ca3005.mzd

PRIORITY TITLE

Prepared On  09/19/2017

PRIORITY TITLE

© 2017 CoreLogic. All rights reserved.

agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses.  If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a  share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance."  Further:

(a)  Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan.  Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b)  Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law.  These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11.  Assignment of Miscellaneous Proceeds; Forfeiture.  All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.  Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction:  (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value.  Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.  "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                        Page 8 of 14

DocMagic ⑩Forms 800-649-1362
www.docmagic.com

06  1382629

Ca3005.mzd

PRIORITY
TITLE
© 2017 CoreLogic. All rights reserved.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated an substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                    Page 9 of 14

DocMagic €Fannie 800-649-1362
www.docmagic.com

06  1382629

Ca3005.mzd

Prepared On  09-19-2017

PRIORITY TITLE

©2017 CoreLogic. All rights reserved.

**Document Images**

specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01
Page 10 of 14

DocMagic *eForms* 800-649-1362
www.docmagic.com

**06  1382629**

Ca3005.mzd

PRIORITY TITLE

Prepared On  09/19/2017

PRIORITY TITLE

© 2017 CoreLogic. All rights reserved

**Document Images**

and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law.  There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note.  If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing.  If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.  If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph.  The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21.  Hazardous Substances.  As used in this Section 21:  (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property.  Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property.  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property.  If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.  Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS.  Borrower and Lender further covenant and agree as follows:

22.  Acceleration; Remedies.  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise).  The notice shall specify:  (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.  The

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01
Page 11 of 14

*DocMagic ⋲ⓇⓐⓡⓜⓈ 800-649-1362*
*www.docmagic.com*

CA3005.mzd

**06  1382629**



**Document Images**

notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power ofsale  and any other remedies permitted by Applicable Law.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold.  Trustee shall cause this notice to be recorded in each county in which any part of the Property is located.  Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law.  Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law.  After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines.  Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied.  The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein.  Trustee shall apply the proceeds of the sale in the following order:  (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23.  Reconveyance.  Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee.  Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it.  Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.  If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24.  Substitute Trustee.  Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located.  The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee.  Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law.  This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25.  Statement of Obligation Fee.  Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                        Page 12 of 14

*DocMagic* *eForms* 800-649-1362
www.docmagic.com

**06  1382629**

Cs3005 mxd

PRIORITY TITLE

Prepared On : 09.19.2017

**PRIORITY TITLE**

© 2017 CoreLogic  All rights reserved

**Document Images**

▲     This page is part of your document - DO NOT DISCARD     ▲

**06 1382630**

**RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA**
**06/23/06 AT 08:00am**

**TITLE(S) :** _____

▲                    ▲

L E A D    S H E E T

**FEE**    FEE $   N            **D.T.T.**
       DAP $
       C-20

**CODE
20**

**CODE
19**

**CODE
9** ____

NOTIFICATION SENT 94 ©

**Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.**    **Number of AIN's Shown**

▲        **THIS FORM IS NOT TO BE DUPLICATED**        ▲

PRIORITY TITLE                  Prepared On  09/19/2017

PRIORITY
TITLE
© 2017 CoreLogic. All rights reserved

**Document Images**

9724264

**TICOR TITLE CO**
**GLENDALE**

06 1382630

Recording Requested By:
AFFILIATED FUNDING CORPORATION
5 HUTTON CENTER DRIVE STE.#1100
SANTA ANA, CALIFORNIA 92707

And After Recording Return To:
AFFILIATED FUNDING CORPORATION
5 HUTTON CENTER DRIVE STE.#1100
SANTA ANA, CALIFORNIA 92707
Loan Number: 106001979900

——————————— [Space Above This Line For Recording Data] ———————————

# DEED OF TRUST

**MIN: 1000827-1060019799-3**

THIS DEED OF TRUST is made this 7th   day of JUNE, 2006          among the Trustor,
MERCEDES COBARRUBIAS, A SINGLE WOMAN

(herein "Borrower"),
TICOR TITLE COMPANY, 500 N CENTRAL AVE 500, GLENDALE, CALIFORNIA
91203                                                      (herein "Trustee"),
and the Beneficiary, Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as
hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of
Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
AFFILIATED FUNDING CORPORATION, A NEVADA CORPORATION
is organized and existing under the laws of  CALIFORNIA                    and has an address of
5 HUTTON CENTER DRIVE STE.#1100, SANTA ANA, CALIFORNIA 92707

(herein "Lender").
BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants
and conveys to Trustee, in trust, with power of sale, the following described property located in the County of
LOS ANGELES        , State of California:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 6192-022-002

**THIS TRUST DEED IS 2ND & SUBJECT TO A FIRST**
**TRUST DEED RECORDING CONCURRENTLY HEREWITH**

THIS SECURITY INSTRUMENT IS SUBORDINATE TO AN EXISTING FIRST
LIEN(S) OF RECORD.
which has the address of  10733 PINE AVENUE
                                          [Street]
LYNWOOD            , California       90262        (herein "Property Address");
        [City]                                [Zip Code]

CALIFORNIA-SECOND MORTGAGE-1/80
Form 3805 - AS AMENDED FOR MERS          Page 1 of 7          DocMagic ℮Forms 800-649-1362
                                                              www.docmagic.com

Ca3805.mzd


PRIORITY TITLE
© 2017 CoreLogic. All rights reserved

**Document Images**

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are hereinafter referred to as the "Property"; Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Deed of Trust; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right:  to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or cancelling this Deed of Trust.

TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note dated JUNE 7, 2006          and extensions and renewals thereof(herein "Note"), in the principal sum of NINETY-EIGHT THOUSAND AND 00/100
Dollars (U.S. $ 98,000.00          ), with interest thereon, providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on  JULY 1, 2036          ; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; and the performance of the covenants and agreements of Borrower herein contained.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

**UNIFORM COVENANTS.**  Borrower and Lender covenant and agree as follows:
1.   **Payment of Principal and Interest.**  Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.
2.   **Funds for Taxes and Insurance.**  Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional Lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution).  Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents.  Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds.  Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made.  The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds.  If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

CALIFORNIA-SECOND MORTGAGE-1/80
Form 3805 - AS AMENDED FOR MERS          Page 2 of 7          *DocMagic ☎800-649-1362*
                                                            *www.docmagic.com*

Ca3805.mrd

06 1382630

PRIORITY TITLE
© 2017 CoreLogic. All rights reserved

**Document Images**

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

**3.   Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

**4.   Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

**5.   Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

**6.   Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7.   Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8.   Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**9.   Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

---

CALIFORNIA-SECOND MORTGAGE-1/80
Form 3805 - AS AMENDED FOR MERS                              Page 3 of 7

DocMagic ☎800-649-1362
www.docmagic.com

Ca3805.mzd

**06  1382630**

PRIORITY TITLE

Prepared On  09-19-2017

**PRIORITY
TITLE**

©2017 CoreLogic. All rights reserved.

**10. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Deed of Trust shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Deed of Trust. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust and the Note are declared to be severable. As used herein, "costs", "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Deed of Trust at the time of execution or after recordation hereof.

**15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**17. Acceleration; Remedies.** Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured

CALIFORNIA-SECOND MORTGAGE-1/80
Form 3805 - AS AMENDED FOR MERS

Page 4 of 7

DocMagic <span>📞</span>800-649-1362
www.docmagic.com

06  1382630

Ca3805.mzd

Prepared On : 09/19/2017

PRIORITY
TITLE

© 2017 CoreLogic. All rights reserved.

**Document Images**

by this Deed of Trust, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which the Property or some part thereof is located. Lender or Trustee shall mail copies of such notice in the manner prescribed by applicable law. After the lapse of such time as may be required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto.

18. **Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to five days before sale of the Property pursuant to the power of sale contained in this Deed of Trust or at any time prior to entry of a judgement enforcing this Deed of Trust if: (a) Borrower pays Lender all sums which would be then due under this Deed of Trust and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

19. **Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

20. **Reconveyance.** Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing indebtedness secured by this

CALIFORNIA-SECOND MORTGAGE-1/80
Form 3805 - AS AMENDED FOR MERS                     Page 5 of 7

DocMagic *€Farmma* 800-649-1362
*www.docmagic.com*

**06  1382630**

Ca3805.mzd

PRIORITY TITLE
© 2017 CoreLogic. All rights reserved

**Document Images**

Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled thereto. Such person or persons shall pay all costs of recordation, if any.

**21. Substitute Trustee.** Lender, at Lender's option, may from time to time appoint a successor trustee to any Trustee appointed hereunder an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county where the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this instrument is recorded and the name and address of the successor trustee. The successor trustee shall, without conveyance of the Property, succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**22. Request for Notices.** Borrower requests that copies of the notice of default and notice of sale be sent to Borrower's address which is the Property Address. Lender requests that copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust be sent to Lender's address, as set forth on page one of this Deed of Trust, as provided by Section 2924(b) of the Civil Code of California.

**23. Statement of Obligations.** Lender may collect a fee not to exceed $15 for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**24.** The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider ☐ Condominium Rider ☐ Second Home Rider
☐ Balloon Rider ☐ Planned Unit Development Rider ☐ Other(s) [specify]
☐ 1-4 Family Rider ☐ Biweekly Payment Rider

### REQUEST FOR NOTICE OF DEFAULT
### AND FORECLOSURE UNDER SUPERIOR
### MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action. In accordance with Section 2924B, Civil Code, request is hereby made that a copy of any notice of default and a copy of any notice of sale under the deed of trust (or mortgage) recorded _____ , in Book _____ .
Page _____ , records of _____ County, (or filed for record with recorder's
serial number _____ County), California, executed by

as trustor (or mortgagor) in which

is named as beneficiary (or mortgagee) and

as trustee be mailed to

at

**NOTICE:** A copy of any notice of default and of any notice of sale will be sent only to the address contained in this recorded request. If your address changes, a new request must be recorded.

Signature: _mercedes C._____

CALIFORNIA-SECOND MORTGAGE-1/80
Form 3805 - AS AMENDED FOR MERS                Page 6 of 7

DocMagic €Forms 800-649-1362
www.docmagic.com

Ca3805.mzd

**06  1382630**

Prepared On : 09/19/2017

PRIORITY
TITLE

© 2017 CoreLogic. All rights reserved

**Document Images**

IN WITNESS WHEREOF, Borrower has executed and acknowledges receipt of pages 1 through 7 of this Deed of Trust.

_mercedes C_
_____
MERCEDES COBARRUBIAS          -Borrower                              _____  -Borrower

_____  -Borrower                              _____  -Borrower

_____  -Borrower                              _____  -Borrower

State of California
County of  LOS ANGELES

On  June  8 , 2006   before me.,  Cynthia Hernandez, notary public,
personally appeared MERCEDES COBARRUBIAS

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature: _____

(Seal)

CYNTHIA HERNANDEZ
Commission # 1534236
Notary Public - California
Los Angeles County
My Comm. Expires Dec 12, 2008

CALIFORNIA-SECOND MORTGAGE-1/80
Form 3805 - AS AMENDED FOR MERS          Page 7 of 7

DocMagic *eForms* 800-649-1362
www.docmagic.com

06  1382630

Ca3805.mzd

Prepared On  09/19/2017

PRIORITY TITLE

© 2017 CoreLogic. All rights reserved.

**Document Images**

## EXHIBIT "A"

THE SOUTHERLY 50 FEET OF THE NORTHERLY 83.50 FEET OF THOSE PORTIONS OF LOTS 6 AND 7 OF TRACT NO. 5103, IN THE CITY OF LYNWOOD, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 53 PAGE(S) 55 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY. LYING WESTERLY OF THE CENTER LINE OF PINE AVENUE AS SHOWN ON THE MAP OF TRACT NO. 10269, RECORDED IN BOOK 221 PAGES 20 AND 21 OF MAPS, IN SAID COUNTY RECORDERS OFFICE, AND THE EASTERLY OF THE NORTHERLY PROLONGATION OF THE EASTERLY LINE OF LOT 1, BLOCK B OF SAID TRACT NO. 10269.

EXCEPT THEREFROM THAT PORTION INCLUDED WITHIN THE LINES OF THE PARCEL OF LAND DESCRIBED IN THE DEED TO THE CITY OF LYNWOOD, RECORDED IN BOOK 16868, PAGE 326 OF OFFICIAL RECORDS OF SAID COUNTY.

06 1382630

Prepared On  09/19/2017

PRIORITY
TITLE

© 2017 CoreLogic. All rights reserved

| Client | Ma Divina Valdovinos | | | | | File No. | Valdovinos / 10733 Pine Ave |
|---|---|---|---|---|---|---|---|
| Property Address | 10733 Pine Ave | | | | | | |
| City | Lynwood | | County | Los Angeles | State | CA | Zip Code | 90262 |
| Owner | Cobarrubias, Valdovinos, & Valdovinos | | | | | | |

## TABLE OF CONTENTS



| | |
|---|---|
| Table of Contents | 1 |
| GP Residential | 2 |
| Additional Comparables 4-6 | 5 |
| GP Residential Certifications Addendum | 6 |
| Market Conditions Addendum to the Appraisal Report | 8 |
| Property Profile | 9 |
| Repairs Estimate | 10 |
| Aerial Map | 11 |
| Plat Map | 12 |
| Building Sketch | 13 |
| Subject Photos | 14 |
| Photograph Addendum | 15 |
| Photograph Addendum | 16 |
| Photograph Addendum | 17 |
| Photograph Addendum | 18 |
| Photograph Addendum | 19 |
| Photograph Addendum | 20 |
| Location Map | 21 |
| Comparable Photos 1-3 | 22 |
| Comparable Photos 4-6 | 23 |
| License | 24 |
| E & O | 25 |
| Invoice | 26 |

Exhibit E

# RESIDENTIAL APPRAISAL REPORT

File No.: Valdovinos / 10733 Pine Ave

## SUBJECT

| | |
|---|---|
| Property Address: 10733 Pine Ave | City: Lynwood   State: CA   Zip Code: 90262 |
| County: Los Angeles | Legal Description: See attached property profile. |

Assessor's Parcel #: 6192-022-002

Tax Year: 2016   R.E. Taxes: $ 4,990   Special Assessments: $ 0   Borrower (if applicable): N/A

Current Owner of Record: Cobarrubias, Valdovinos, & Valdovinos   Occupant: ☒ Owner ☐ Tenant ☐ Vacant ☐ Manufactured Housing

Project Type: ☐ PUD ☐ Condominium ☐ Cooperative ☒ Other (describe) N/A   HOA: $ 0 ☐ per year ☐ per month

Market Area Name: Northeast Lynwood   Map Reference: TG 705-D6   Census Tract: 5401.01

## ASSIGNMENT

The purpose of this appraisal is to develop an opinion of: ☒ Market Value (as defined), or ☐ other type of value (describe)

This report reflects the following value (if not Current, see comments): ☒ Current (the Inspection Date is the Effective Date) ☐ Retrospective ☐ Prospective

Approaches developed for this appraisal: ☒ Sales Comparison Approach ☐ Cost Approach ☐ Income Approach (See Reconciliation Comments and Scope of Work)

Property Rights Appraised: ☒ Fee Simple ☐ Leasehold ☐ Leased Fee ☐ Other (describe)

Intended Use: To ascertain fair market value of the subject property as of the effective date of the appraisal, subject to the scope of work, purpose of the appraisal,
reporting requirements of this appraisal report, and definition of market value.

Intended User(s) (by name or type): Ma Divina Valdovinos (Client)

Client: Ma Divina Valdovinos   Address: 10733 Pine Ave, Lynwood, CA 90262

Appraiser: Jose Pinzon   Address: 16927 Septo St, North Hills, CA 91343

## MARKET AREA DESCRIPTION

| Location: | ☐ Urban ☒ Suburban ☐ Rural | Predominant Occupancy | One-Unit Housing | | Present Land Use | Change in Land Use |
|---|---|---|---|---|---|---|
| Built up: | ☒ Over 75% ☐ 25-75% ☐ Under 25% | | PRICE $(000) | AGE (yrs) | One-Unit 70 % | ☒ Not Likely |
| Growth rate: | ☐ Rapid ☒ Stable ☐ Slow | ☒ Owner 90 | | | 2-4 Unit 10 % | ☐ Likely * ☐ In Process * |
| Property values: | ☐ Increasing ☒ Stable ☐ Declining | ☐ Tenant 10 | 215 Low 20 | | Multi-Unit 5 % | * To: |
| Demand/supply: | ☒ Shortage ☐ In Balance ☐ Over Supply | ☒ Vacant (0-5%) | 540 High 95 | | Comm'l 5 % | |
| Marketing time: | ☒ Under 3 Mos. ☐ 3-6 Mos. ☐ Over 6 Mos. | ☐ Vacant (>5%) | 400 Pred 75 | | Other 10 % | |

Market Area Boundaries, Description, and Market Conditions (including support for the above characteristics and trends):   The market area considered is bounded, in
general, by Firestone Blvd to the North, the I-105 freeway to the South, I-710 freeway to the East, and Long Beach Blvd to the West.

The neighborhood is comprised mostly of single story SFR's built during the 1930's to the 1950's. Dwellings vary in size, maintenance level, and quality of
upgrading. Consumer and support type facilities as well as freeway access are mostly available within 1 to 2 radial miles from the subject. The other 10% in the
"present land use" section above pertains to schools, parks, and other city/county properties.

See attached market conditions addendum for comments about market trends.

## SITE DESCRIPTION

| | |
|---|---|
| Dimensions: Irregular - See plat map. | Site Area: 5,816 sf |
| Zoning Classification: R-1 | Description: SFR (minimum lot area of 5,000 sf, lot width of 50 ft, |

and lot depth of 100 ft)   Zoning Compliance: ☒ Legal ☐ Legal nonconforming (grandfathered) ☐ Illegal ☐ No zoning

Are CC&Rs applicable? ☐ Yes ☐ No ☒ Unknown   Have the documents been reviewed? ☐ Yes ☐ No   Ground Rent (if applicable) $ /

Highest & Best Use as improved: ☒ Present use, or ☐ Other use (explain)

Actual Use as of Effective Date: SFR   Use as appraised in this report: SFR

Summary of Highest & Best Use:   Highest and Best Use analysis confirms that the current use, SFR, is the highest and best use as of the effective date of the
assignment. The appraiser is unaware of CC&R's are applicable. Documents, if any, have not been made available to the appraiser for review.

| Utilities | Public | Other | Provider/Description | Off-site Improvements | Type | Public | Private | Topography | Level/Typical |
|---|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | ☐ | Edison/Typical | Street | Asphalt/Typical | ☒ | ☐ | Size | Typical/Conforming |
| Gas | ☒ | ☐ | SoCal Gas/Typical | Curb/Gutter | Concrete/Typical | ☒ | ☐ | Shape | Irregular/Typical |
| Water | ☒ | ☐ | City/Typical | Sidewalk | Concrete/Typical | ☒ | ☐ | Drainage | Appears Adequate/Typical |
| Sanitary Sewer | ☒ | ☐ | City/Typical | Street Lights | Concrete/Typical | ☒ | ☐ | View | Neighborhood |
| Storm Sewer | ☐ | ☒ | N/A | Alley | None | | | | |

Other site elements: ☐ Inside Lot ☒ Corner Lot ☐ Cul de Sac ☐ Underground Utilities ☒ Other (describe) Sides Busy Road

FEMA Spec'l Flood Hazard Area ☐ Yes ☒ No   FEMA Flood Zone X500   FEMA Map # 06037C1820F   FEMA Map Date 09/26/2008

Site Comments:   The subject sides to a busy street. Other than this, it is immediately surrounded by SFR's with no further external obsolescence noted.
Proximity to freeway, schools, and other non-residential sites is typical for the area and consistent among the comps. Inadequacies, if any, are buffered by the
adjacent properties. Physical characteristics of the subject lot appear to be compliant with zoning's minimum site requirements.

## DESCRIPTION OF THE IMPROVEMENTS

| General Description | | Exterior Description | | Foundation | | Basement | ☒ None | Heating | Yes |
|---|---|---|---|---|---|---|---|---|---|
| # of Units | 1 ☐ Acc.Unit | Foundation | Raised/Avg. | Slab | No | Area Sq. Ft. | | Type | Floor |
| # of Stories | 1 | Exterior Walls | Stucco/Avg. | Crawl Space | Yes | % Finished | | Fuel | Gas |
| Type ☒ Det. ☐ Att. | | Roof Surface | Composite/Avg. | Basement | None | Ceiling | | | |
| Design (Style) | Bungalow | Gutters & Dwnspts. | Eaves/Fair | Sump Pump | ☐ N/A | Walls | | Cooling | Yes |
| ☒ Existing ☐ Proposed ☐ Und.Cons. | | Window Type | Vinyl/Alum/Avg. | Dampness | ☐ N/A | Floor | | Central | No |
| Actual Age (Yrs.) | 69 | Storm/Screens | Avg./Avg. | Settlement | None Noted | Outside Entry | No | Other | Ceiling Fans |
| Effective Age (Yrs.) | 35 | | | Infestation | None Noted | | | | |

| Interior Description | | Appliances | | Attic | ☐ None | Amenities | | Car Storage | ☐ None |
|---|---|---|---|---|---|---|---|---|---|
| Floors | Tile/Carpet/Avg. | Refrigerator | ☒ | Stairs | ☐ | Fireplace(s) # 0 | ☐ Woodstove(s) # 0 | Garage # of cars ( 3 Tot.) | |
| Walls | Drywall/Avg. | Range/Oven | ☒ | Drop Stair | ☐ | Patio | Enclosed | Attach. 0 | |
| Trim/Finish | Painted/Avg. | Disposal | ☒ | Scuttle | ☒ | Deck | None | Detach. 2 Car | |
| Bath Floor | Tile/Avg. | Dishwasher | ☐ | Doorway | ☐ | Porch | Covered | Blt.-In 0 | |
| Bath Wainscot | Tile/Avg. | Fan/Hood | ☒ | Floor | ☐ | Fence | Block/Iron | Carport 0 | |
| Doors | Wood/Avg. | Microwave | ☐ | Heated | ☐ | Pool | None | Driveway 1 Car | |
| | | Washer/Dryer | ☐ | Finished | ☐ | | | Surface Concrete | |

Finished area above grade contains:   5 Rooms   2 Bedrooms   2.0 Bath(s)   1,183 Square Feet of Gross Living Area Above Grade

Additional features:   None noted during inspection.

Describe the condition of the property (including physical, functional and external obsolescence):   The subject is 69 year old structure appearing to be in less than
average condition with no recent updates apparent during inspection. Repairs noted include missing CO detector, missing ceiling panels in kitchen, damaged
eaves on patio, tarp-covered patio roof, and damaged section of the perimeter fence. A list of repairs provided to the appraiser also show a total cost to cure of
$40,500. A roof inspection is recommended to assess the condition of the patio roof. The enclosed patio was inaccessible during inspection. See GP
Certifications Addendum for extraordinary assumptions made by the appraiser regarding the enclosed patio. Measured GLA is consistent with property profile.
The subject, however, added a 2nd bath without extending the GLA. A 2nd bath was likely done in a workmanlike manner, though permits, if any, could
not be verified during normal course of business. The den is also being used as a 3rd bedroom but was reflected as a den in this report.

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

## GP RESIDENTIAL

FHA/VA Case No.    3 of 26

# RESIDENTIAL APPRAISAL REPORT

File No.:    Valdovinos / 10733 Pine Ave

### TRANSFER HISTORY

| | |
|---|---|
| My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal. | |
| Data Source(s): | Realist_NDCData, CRMLS |
| 1st Prior Subject Sale/Transfer | Analysis of sale/transfer history and/or any current agreement of sale/listing: No title transfers noted for the subject within |
| Date: | the past 36 months.  There were also no listings noted for the subject within the past 12 months. |
| Price: | |
| Source(s): | |
| 2nd Prior Subject Sale/Transfer | |
| Date: | |
| Price: | |
| Source(s): | |

### SALES COMPARISON APPROACH

**SALES COMPARISON APPROACH TO VALUE (if developed)**    ☐ The Sales Comparison Approach was not developed for this appraisal.

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | +(-) $ Adjust. | COMPARABLE SALE # 2 | +(-) $ Adjust. | COMPARABLE SALE # 3 | +(-) $ Adjust. |
|---|---|---|---|---|---|---|---|
| Address | 10733 Pine Ave Lynwood, CA 90262 | 10941 Lewis Rd Lynwood, CA 90262 | | 3891 Walnut Ave Lynwood, CA 90262 | | 10500 Rosewood Ave South Gate, CA 90280 | |
| Proximity to Subject | | 0.47 miles W | | 0.96 miles SW | | 0.21 miles NE | |
| Sale Price | $ | $ 343,000 | | $ 353,000 | | $ 350,000 | |
| Sale Price/GLA | $ /sq.ft. | $ 264.25 /sq.ft. | | $ 350.20 /sq.ft. | | $ 253.62 /sq.ft. | |
| Data Source(s) | CRMLS, Realist | CRMLS#RS16737445; DOM: 188 | | CRMLS#DW17042732;DOM 13 | | CRMLS#WS17112381; DOM: 53 | |
| Verification Source(s) | NDC, Inspection | Doc#875930 | | Doc#503154 | | Doc#902847 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. |
| Sales or Financing | | Probate | | Arm's Length | | Probate | |
| Concessions | | Conv; $0 | | FHA; $0 | | Conv; $0 | |
| Date of Sale/Time | | 08/03/2017 | | 05/05/2017 | | 08/10/2017 | |
| Rights Appraised | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Location | Busy Road | Commercial | 0 | Residential | -17,500 | Residential | -17,500 |
| Site | 5,816 sf | 6,543 sf | 0 | 6,000 sf | | 5,228 sf | 0 |
| View | Neighborhood | Neighborhood | | Neighborhood | | Neighborhood | |
| Design (Style) | Bungalow | Bungalow | | Bungalow | | Bungalow | |
| Quality of Construction | Average | Average | | Average | | Average | |
| Age | 69 | 77 | | 92 | | 77 | |
| Condition | Fair | Fair | | Average | -35,500 | Fair | |
| Above Grade | Total / Bdrms / Baths 5 / 2 / 2.0 | Total / Bdrms / Baths 5 / 3 / 2.0 | | Total / Bdrms / Baths 5 / 2 / 1.0 | +10,000 | Total / Bdrms / Baths 5 / 2 / 2.0 | |
| Room Count | | | | | | | |
| Gross Living Area | 1,183 sq.ft. | 1,298 sq.ft. | -6,000 | 1,008 sq.ft. | +9,000 | 1,380 sq.ft. | -10,000 |
| Basement & Finished | 0sf | 0sf | | 0sf | | 0sf | |
| Rooms Below Grade | | | | | | | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | Floor/C.Fans | Similar | 0 | Similar | 0 | Similar | 0 |
| Energy Efficient Items | None Noted | None Noted | | None Noted | | None Noted | |
| Garage/Carport | 2 Car Garage | 2 Car Garage | | 0 Car Garage | +10,000 | 2 Car Garage | |
| Porch/Patio/Deck | Porch, Patio | Similar | 0 | Similar | 0 | Similar | 0 |
| Pool | None | None | | None | | None | |
| Prior Sale Date | | None within 12 | | None within 12 | | None within 12 | |
| Prior Sale Price | | months from sale. | | months from sale. | | months from sale. | |
| Prior Sale Data Source | | Realist, NDC, CRMLS | | Realist, NDC, CRMLS | | Realist, NDC, CRMLS | |
| Net Adjustment (Total) | | ☐ + ☒ - $ | -6,000 | ☐ + ☒ - $ | -24,000 | ☐ + ☒ - $ | -27,500 |
| Adjusted Sale Price | | 1.7 | | 6.8 | | 7.9 | |
| of Comparables | | 1.7 $ 337,000 | | 23.2 $ 329,000 | | 7.9 $ 322,500 | |

Summary of Sales Comparison Approach    See additional comparable page.

Indicated Value by Sales Comparison Approach $    332,500

Copyright 2007 by a la mode, inc.  This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

**GP RESIDENTIAL**

# RESIDENTIAL APPRAISAL REPORT

File No.:   Valdovinos / 10733 Pine Ave

## COST APPROACH

**COST APPROACH TO VALUE (if developed)**   ☒ The Cost Approach was not developed for this appraisal.

Provide adequate information for replication of the following cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)

| ESTIMATED ☐ REPRODUCTION OR ☐ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | =$ |
|---|---|---|---|
| Source of cost data: | DWELLING | Sq.Ft. @ $ | =$ |
| Quality rating from cost service:    Effective date of cost data: | | Sq.Ft. @ $ | =$ |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.): | | Sq.Ft. @ $ | =$ |
| | | Sq.Ft. @ $ | =$ |
| | | Sq.Ft. @ $ | =$ |
| | Garage/Carport | Sq.Ft. @ $ | =$ |
| | Total Estimate of Cost-New | | =$ |
| | Less    Physical    Functional    External | | |
| | Depreciation | | =$(           ) |
| | Depreciated Cost of Improvements | | =$ |
| | "As-is" Value of Site Improvements | | =$ |
| | | | =$ |
| | | | =$ |
| Estimated Remaining Economic Life (if required):                Years | INDICATED VALUE BY COST APPROACH | | =$ |

## INCOME APPROACH

**INCOME APPROACH TO VALUE (if developed)**   ☒ The Income Approach was not developed for this appraisal.

Estimated Monthly Market Rent $ _____ X Gross Rent Multiplier _____ = $ _____   **Indicated Value by Income Approach** _____

Summary of Income Approach (including support for market rent and GRM)

## PUD

**PROJECT INFORMATION FOR PUDs (if applicable)**   ☐ The Subject is part of a Planned Unit Development.

Legal Name of Project:

Describe common elements and recreational facilities:

## RECONCILIATION

Indicated Value by: Sales Comparison Approach $   **332,500**        Cost Approach (if developed) $ _____        Income Approach (if developed) $ _____

Final Reconciliation    **The sales approach was given most weight, as it reflects the actions of buyers and sellers in the marketplace. It is considered to be the most reliable indicator of value for this property type. The cost approach was considered less reliable while the income approach was not applicable. Both were not performed. The estimated opinion of value for the subject is within 5% of the predominant value in the area and well within the price range of condominium units in the area, as described on page 1 of this form. The subject is not considered over or under improved for the area.**

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a Hypothetical Condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a Hypothetical Condition that the repairs or alterations have been completed, ☐ subject to the following required inspection based on the Extraordinary Assumption that the condition or deficiency does not require alteration or repair:   **Value estimate subject to the installation of a CO detector.**

☐ This report is also subject to other Hypothetical Conditions and/or Extraordinary Assumptions as specified in the attached addenda.

Based on the degree of inspection of the subject property, as indicated below, defined Scope of Work, Statement of Assumptions and Limiting Conditions, and Appraiser's Certifications, my (our) Opinion of the Market Value (or other specified value type), as defined herein, of the real property that is the subject of this report is: $       **332,500**       , as of:       **08/26/2017**       , which is the effective date of this appraisal. If indicated above, this Opinion of Value is subject to Hypothetical Conditions and/or Extraordinary Assumptions included in this report.   **See attached addenda.**

## ATTACHMENTS

A true and complete copy of this report contains   **26**   pages, including exhibits which are considered an integral part of the report. This appraisal report may not be properly understood without reference to the information contained in the complete report.

Attached Exhibits:

| | | | |
|---|---|---|---|
| ☒ Table of Contents | ☒ Additional Sales | ☒ Certifications Addendum | ☒ Market Conditions Addendum | ☒ Property Profile |
| ☒ Repairs Estimate | ☒ Map Addendum | ☒ Sketch Addendum | ☒ Photograph Addendum | ☒ Copy of License |
| ☒ Copy of E & O | ☒ Invoice | ☐ N/A | ☐ N/A | ☐ N/A |

Client Contact:   **Ma Divina Valdovinos**          Client Name:   **Ma Divina Valdovinos**

E-Mail:   **joaquin.c.valdovinos@gmail.com**          Address:   **10733 Pine Ave, Lynwood, CA 90262**

## SIGNATURES

| APPRAISER | SUPERVISORY APPRAISER (if required) or CO-APPRAISER (if applicable) |
|---|---|
| *[signature: Pinzon]* | |
| Appraiser Name:   **Jose Pinzon** | Supervisory or Co-Appraiser Name: |
| Company:   **Jose Pinzon Appraisals** | Company: |
| Phone:   **(818) 793-6890**     Fax: | Phone:     Fax: |
| E-Mail:   **tonichi.pinzon@gmail.com** | E-Mail: |
| Date of Report (Signature):   **09/07/2017** | Date of Report (Signature): |
| License or Certification #:   **3000833**     State:   **CA** | License or Certification #:     State: |
| Designation: | Designation: |
| Expiration Date of License or Certification:   **04/24/2019** | Expiration Date of License or Certification: |
| Inspection of Subject:   ☒ Interior & Exterior   ☐ Exterior Only   ☐ None | Inspection of Subject:   ☐ Interior & Exterior   ☐ Exterior Only   ☐ None |
| Date of Inspection:   **08/26/2017** | Date of Inspection: |

**GP RESIDENTIAL**

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

Form GPRES2 – "TOTAL" appraisal software by a la mode, inc. – 1-800-ALAMODE     3/2007

# ADDITIONAL COMPARABLE SALES

File No.: Valdovinos / 10733 Pine Ave

Prev. Case No.    5 of 26

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | | COMPARABLE SALE # 5 | | COMPARABLE SALE # 6 | |
|---|---|---|---|---|---|---|---|
| Address | 10733 Pine Ave Lynwood, CA 90262 | 4655 Tweedy Blvd South Gate, CA 90280 | | 3824 Lilita St Lynwood, CA 90262 | | | |
| Proximity to Subject | | 0.60 miles N | | 0.64 miles SW | | | |
| Sale Price | $ | | $ 405,000 | | $ 390,000 | | $ |
| Sale Price/GLA | $ /sq.ft. | $ 309.63 /sq.ft. | | $ 287.40 /sq.ft. | | $ /sq.ft. | |
| Data Source(s) | CRMLS, Realist | CRMLS#PW16732315; DOM: 144 | | CRMLS#RS17186227;DOM 3 | | | |
| Verification Source(s) | NDC, Inspection | Doc#295044 | | Doc#993930 | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | + (-) $ Adjust. | DESCRIPTION | + (-) $ Adjust. | DESCRIPTION | + (-) $ Adjust. |
| Sales or Financing Concessions | | Arm's Length Conv; $0 | | Arm's Length Conv; $0 | | | |
| Date of Sale/Time | | 03/15/2017 | | 08/31/2017 | | | |
| Rights Appraised | Fee Simple | Fee Simple | | Fee Simple | | | |
| Location | Busy Road | Busy Road | | Residential | -19,500 | | |
| Site | 5,816 sf | 8,335 sf | -12,500 | 5,994 sf | | | |
| View | Neighborhood | Neighborhood | | Neighborhood | | | |
| Design (Style) | Bungalow | Bungalow | | Bungalow | | | |
| Quality of Construction | Average | Average | | Average | | | |
| Age | 69 | 75 | | 76 | | | |
| Condition | Fair | Average | -40,500 | Average | -39,000 | | |
| Above Grade | Total Bdrms Baths | Total Bdrms Baths | | Total Bdrms Baths | | Total Bdrms Baths | |
| Room Count | 5 2 2.0 | 5 2 1.0 | +10,000 | 5 3 2.0 | 0 | | |
| Gross Living Area | 1,183 sq.ft. | 1,308 sq.ft. | -6,500 | 1,357 sq.ft. | -8,500 | sq.ft. | |
| Basement & Finished | 0sf | 0sf | | 0sf | | | |
| Rooms Below Grade | | | | | | | |
| Functional Utility | Average | Average | | Average | | | |
| Heating/Cooling | Floor/C.Fans | Similar | 0 | FAU/CAC | -5,000 | | |
| Energy Efficient Items | None Noted | None Noted | | None Noted | | | |
| Garage/Carport | 2 Car Garage | 2 Car Garage | | 2 Car Garage | | | |
| Porch/Patio/Deck | Porch, Patio | Similar | 0 | Similar | 0 | | |
| Pool | None | None | | None | | | |
| Prior Sale Date | | None within 12 | | None within 12 | | | |
| Prior Sale Price | | months from sale. | | months from sale. | | | |
| Prior Sale Data Source | | Realist, NDC, CRMLS | | Realist, NDC, CRMLS | | | |
| Net Adjustment (Total) | | + X - | $ -49,500 | + X - | $ -72,000 | + - | $ |
| Adjusted Sale Price | | | 12.2 | | 18.5 | | 0.0 |
| of Comparables | | 17.2 | $ 355,500 | 18.5 | $ 318,000 | 0.0 | $ 0 |

**SALES COMPARISON APPROACH**

Summary of Sales Comparison Approach      A thorough search was made in an attempt to find comps that best reflect the subject's fair market value. From the list of comps generated in the 1004mc, comps 1 to 5 were selected for being the most recent sale, most proximate, and/or most similar to the subject, overall. It was also necessary to use probate sales to bracket the subject's condition. Adjustments were based on typical market reactions and contributory value of amenities. Bracketing was also necessary to estimate adjustment rates. No time adjustments applied with value trend noted to be stable. Residential location considered superior and adjusted at 5%, lot size at $5.00/sf when difference is greater than 1,000 sf, superior condition (for appearing to be in average overall condition, per CRMLS) at 10%, full baths at $10,000 each, GLA at $50.00/sf when difference is greater than 100 sf, central air at $5,000, and garage at 5,000/bay. All adjustments were rounded-off to the nearest $500. Effective ages, which were considered in the condition ratings, were given more emphasis than actual ages while GLA was given more emphasis than bedroom count. Thus, no actual age and bedroom count adjustments were applied.

In the final reconciliation, a weighted average was used in determining an opinion of market value for the subject. Comp 1 was given most weight for having the least amount of net and gross adjustments. It received 30%. Comps 2 and 3 were given secondary weight for having the next least amount of net and gross adjustments, respectively. Each received 20%. Comps 4 and 5 were given least weight due having the most amount of net and gross adjustments. Each received 15%. Based on this, a market value for the subject that is less than the unadjusted price range of the comps is being suggested. This is not uncommon in appraising in this market.

Comps 1 to 5 had no other title transfers within 12 months prior to their most recent purchase transactions.

**GP** RESIDENTIAL

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.
Form GPRES2.(AC) - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE                                    3/2007

# Assumptions, Limiting Conditions & Scope of Work

File No.:  Valdovinos / 10733 Pine Ave

| | | | |
|---|---|---|---|
| Property Address:  10733 Pine Ave | City:  Lynwood | State:  CA | Zip Code:  90262 |

| | |
|---|---|
| Client:  Ma Divina Valdovinos | Address:  10733 Pine Ave, Lynwood, CA 90262 |
| Appraiser:  Jose Piñzon | Address:  16927 Septo St, North Hills, CA 91343 |

### STATEMENT OF ASSUMPTIONS & LIMITING CONDITIONS

– The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

– The appraiser may have provided a sketch in the appraisal report to show approximate dimensions of the improvements, and any such sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size. Unless otherwise indicated, a Land Survey was not performed.

– If so indicated, the appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

– The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

– If the cost approach is included in this appraisal, the appraiser has estimated the value of the land in the cost approach at its highest and best use, and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used. Unless otherwise specifically indicated, the cost approach value is not an insurance value, and should not be used as such.

– The appraiser has noted in the appraisal report any adverse conditions (including, but not limited to, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property, or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property, or adverse environmental conditions (including, but not limited to, the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

– The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

– The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice, and any applicable federal, state or local laws.

– If this appraisal is indicated as subject to satisfactory completion, repairs, or alterations, the appraiser has based his or her appraisal report and valuation conclusion on the assumption that completion of the improvements will be performed in a workmanlike manner.

– An appraiser's client is the party (or parties) who engage an appraiser in a specific assignment. Any other party acquiring this report from the client does not become a party to the appraiser–client relationship. Any persons receiving this appraisal report because of disclosure requirements applicable to the appraiser's client do not become intended users of this report unless specifically identified by the client at the time of the assignment.

– The appraiser's written consent and approval must be obtained before this appraisal report can be conveyed by anyone to the public, through advertising, public relations, news, sales, or by means of any other media, or by its inclusion in a private or public database.

– An appraisal of real property is not a 'home inspection' and should not be construed as such. As part of the valuation process, the appraiser performs a non–invasive visual inventory that is not intended to reveal defects or detrimental conditions that are not readily apparent. The presence of such conditions or defects could adversely affect the appraiser's opinion of value. Clients with concerns about such potential negative factors are encouraged to engage the appropriate type of expert to investigate.


The Scope of Work is the type and extent of research and analyses performed in an appraisal assignment that is required to produce credible assignment results, given the nature of the appraisal problem, the specific requirements of the intended user(s) and the intended use of the appraisal report. Reliance upon this report, regardless of how acquired, by any party or for any use, other than those specified in this report by the Appraiser, is prohibited. The Opinion of Value that is the conclusion of this report is credible only within the context of the Scope of Work, Effective Date, the Date of Report, the Intended User(s), the stated Assumptions and Limiting Conditions, any Hypothetical Conditions and/or Extraordinary Assumptions, and the Type of Value, as defined herein. The appraiser, appraisal firm, and related parties assume no obligation, liability, or accountability, and will not be responsible for any unauthorized use of this report or its conclusions.


Additional Comments (Scope of Work, Extraordinary Assumptions, Hypothetical Conditions, etc.):

The enclosed patio was inaccessible during inspection.  An extraordinary assumption is made that it is still an enclosed patio with no health, safety, zoning, and/or building code issues present.  An extraordinary assumption is also made that the quality and overall condition of the interior of the enclosed patio are consistent with how it appears from the outside.  The appraiser reserves the right to revise this report if any of these extraordinary assumptions are found to be false or inaccurate.


Purpose:
The purpose and function of this appraisal is to provide an opinion of value for the subject property as defined herein, and to assist the client and/or the client's assignee in evaluating the subject property for private purposes, and is not intended for use by any other party for any other purpose.  The appraiser is not responsible for unauthorized use of this report.


Scope of Work:
1) After receiving the assignment, an extensive search of all resources customary to the appraisal of residential real estate was made to determine general market trends, influences, and other significant factors pertinent to the subject property.
2) An inspection of the subject was performed, including measuring of the structure/s as well as gathering of exterior and interior photos.
3) A drive-by inspection was performed for each sale/listing comparable.
4) A written report was then completed, with appropriate adjustments being made to the comparables in order to provide an accurate opinion of value.
5) An appraisal report was then sent to the intended user(s).


Intended User and Use:
The intended user of this report is Ma Divina Valdovinos (Client).  The intended use is to ascertain fair market value of the property that is the subject of this assignment as of the effective date, subject to the scope of work, purpose of the appraisal, reporting requirements of this appraisal report, and definition of market value.

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

GP RESIDENTIAL

## Certifications

File No.: Valdovinos / 10733 Pine Ave

| Property Address: | 10733 Pine Ave | | City: Lynwood | State: CA | Zip Code: 90262 |
|---|---|---|---|---|---|
| Client: | Ma Divina Valdovinos | Address: | 10733 Pine Ave, Lynwood, CA 90262 | | |
| Appraiser: | Jose Pinzon | Address: | 16927 Septo St, North Hills, CA 91343 | | |

**APPRAISER'S CERTIFICATION**

I certify that, to the best of my knowledge and belief:

- The statements of fact contained in this report are true and correct.
- The credibility of this report, for the stated use by the stated user(s), of the reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.
- I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.
- I have performed no services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.
- I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.
- My engagement in this assignment was not contingent upon developing or reporting predetermined results.
- My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice that were in effect at the time this report was prepared.
- I did not base, either partially or completely, my analysis and/or my opinion of value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property, or of the present owners or occupants of the properties in the vicinity of the subject property.
- I have made a personal inspection of the property that is the subject of this report.
- No one provided significant real property appraisal assistance to the person(s) signing this certification.

Additional Certifications:

***Intentionally left blank***


**DEFINITION OF MARKET VALUE \*:**

Market value means the most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:

1. Buyer and seller are typically motivated;
2. Both parties are well informed or well advised and acting in what they consider their own best interests;
3. A reasonable time is allowed for exposure in the open market;
4. Payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and
5. The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale.

\*This definition is from regulations published by federal regulatory agencies pursuant to Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA) of 1989 between July 5, 1990, and August 24, 1990, by the Federal Reserve System (FRS), National Credit Union Administration (NCUA), Federal Deposit Insurance Corporation (FDIC), the Office of Thrift Supervision (OTS), and the Office of Comptroller of the Currency (OCC). This definition is also referenced in regulations jointly published by the OCC, OTS, FRS, and FDIC on June 7, 1994, and in the Interagency Appraisal and Evaluation Guidelines, dated October 27, 1994.

***END***


| | | |
|---|---|---|
| Client Contact: Ma Divina Valdovinos | | Client Name: Ma Divina Valdovinos |
| E-Mail: joaquin.c.valdovinos@gmail.com | Address: | 10733 Pine Ave, Lynwood, CA 90262 |

| APPRAISER | SUPERVISORY APPRAISER (if required) or CO-APPRAISER (if applicable) |
|---|---|
| Appraiser Name: Jose Pinzon | Supervisory or Co-Appraiser Name: |
| Company: Jose Pinzon Appraisals | Company: |
| Phone: (818) 793-6890    Fax: | Phone:    Fax: |
| E-Mail: tonichi.pinzon@gmail.com | E-Mail: |
| Date Report Signed: 09/07/2017 | Date Report Signed: |
| License or Certification #: 3000833    State: CA | License or Certification #:    State: |
| Designation: | Designation: |
| Expiration Date of License or Certification: 04/24/2019 | Expiration Date of License or Certification: |
| Inspection of Subject: ☒ Interior & Exterior ☐ Exterior Only ☐ None | Inspection of Subject: ☐ Interior & Exterior ☐ Exterior Only ☐ None |
| Date of Inspection: 08/26/2017 | Date of Inspection: |

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.
Form GPRES2AD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE    3/2007

**GP RESIDENTIAL**

## Market Conditions Addendum to the Appraisal Report

File No.  Valdovinos / 10733 Pine Ave

The purpose of this addendum is to provide the lender/client with a clear and accurate understanding of the market trends and conditions prevalent in the subject neighborhood. This is a required addendum for all appraisal reports with an effective date on or after April 1, 2009.

| Property Address | 10733 Pine Ave | City Lynwood | State CA | ZIP Code 90262 |
|---|---|---|---|---|

Borrower  N/A

**Instructions:** The appraiser must use the information required on this form as the basis for his/her conclusions, and must provide support for those conclusions, regarding housing trends and overall market conditions as reported in the Neighborhood section of the appraisal report form. The appraiser must fill in all the information to the extent it is available and reliable and must provide analysis as indicated below. If any required data is unavailable or is considered unreliable, the appraiser must provide an explanation. It is recognized that not all data sources will be able to provide data for the shaded areas below; if it is available, however, the appraiser must include the data in the analysis. If data sources provide the required information as an average instead of the median, the appraiser should report the available figure and identify it as an average. Sales and listings must be properties that compete with the subject property, determined by applying the criteria that would be used by a prospective buyer of the subject property. The appraiser must explain any anomalies in the data, such as seasonal markets, new construction, foreclosures, etc.

| Inventory Analysis | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | 23 | 15 | 21 | ☒ Increasing | ☐ Stable | ☐ Declining |
| Absorption Rate (Total Sales/Months) | 3.83 | 5 | 7 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Total # of Comparable Active Listings | 9 | 11 | 6 | ☐ Declining | ☐ Stable | ☒ Increasing |
| Months of Housing Supply (Total Listings/Ab.Rate) | 2.35 | 2.2 | 0.9 | ☒ Declining | ☐ Stable | ☐ Increasing |

| Median Sale & List Price, DOM, Sale/List % | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Median Comparable Sale Price | $400,000 | $425,000 | $410,000 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Median Comparable Sales Days on Market | 30 | 27 | 15 | ☒ Declining | ☐ Stable | ☐ Increasing |
| Median Comparable List Price | $465,000 | $410,000 | $417,500 | ☒ Increasing | ☐ Stable | ☐ Declining |
| Median Comparable Listings Days on Market | 39 | 57 | 17 | ☐ Declining | ☒ Stable | ☐ Increasing |
| Median Sale Price as % of List Price | 100% | 100% | 100% | ☐ Increasing | ☒ Stable | ☐ Declining |
| Seller-(developer, builder, etc.)paid financial assistance prevalent? | ☐ Yes | ☒ No | | ☐ Declining | ☒ Stable | ☐ Increasing |

Explain in detail the seller concessions trends for the past 12 months (e.g., seller contributions increased from 3% to 5%, increasing use of buydowns, closing costs, condo fees, options, etc.)  CRMLS indicates there were 59 closed comparable sales during the past 12 months and 17 of those sales contained seller concessions which is approximately 29% of the reported transactions. The median concession amount was $4,000. The reporting of concessions, however, is not mandatory for agents and there may be some transactions that do include concessions but have not been reported.  It is beyond the scope of this assignment to confirm each sale used in the market conditions report.

Are foreclosure sales (REO sales) a factor in the market?   ☐ Yes   ☒ No   If yes, explain (including the trends in listings and sales of foreclosed properties).
CRMLS indicates there were 59 closed comparable sales during the past 12 months and 4 of those sales were either foreclosures or short sales which is approximately 7% of the reported transactions. Furthermore, 2 of the 16 (active and pending) comparable listings currently in the CRMLS are either foreclosures or short sales which is 12.5%.

Cite data sources for above information.    CRMLS

Summarize the above information as support for your conclusions in the Neighborhood section of the appraisal report form. If you used any additional information, such as an analysis of pending sales and/or expired and withdrawn listings, to formulate your conclusions, provide both an explanation and support for your conclusions.
(Effective date: 08/26/2017) The market considered is within 1 radial mile from the subject and within the neighborhood boundaries described on page 1 of the main form.  This included areas from the subject's city of Lynwood, CA as well as areas from the adjacent city of South Gate, CA.  Comparable dwellings are SFR's with living areas ranging from 950 sf to 1,400 sf (+/- 20% of the subject's measured GLA, which is the typical GLA variance in the area).  Houses that were in need of significant repairs, targeting investors/flippers, as well as short sales with unreasonably low listing prices were excluded as comps from this analysis. Based on the generated data pool above, property values appear to have been relatively stable in the last year, with fluctuations in median comparable sale prices considered normal. Demand appears to have recently strengthened, with marketing time expected to be within 3 months.  This was based on the current months of housing supply and on the typical DOM of the listing comps. Exposure time (at the subject's indicated opinion of value) would have also been within 3 months based on the typical DOM of the sale comps. Conventional, FHA, and VA financing are prevalent in this market area with typical listings selling at 100% (or more) of their asking prices, when priced reasonably.

If the subject is a unit in a condominium or cooperative project, complete the following:      Project Name:

| Subject Project Data | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Absorption Rate (Total Sales/Months) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Total # of Active Comparable Listings | | | | ☐ Declining | ☐ Stable | ☐ Increasing |
| Months of Unit Supply (Total Listings/Ab.Rate) | | | | ☐ Declining | ☐ Stable | ☐ Increasing |

Are foreclosure sales (REO sales) a factor in the project?   ☐ Yes   ☐ No   If yes, indicate the number of REO listings and explain the trends in listings and sales of foreclosed properties.

Summarize the above trends and address the impact on the subject unit and project.

| Signature | Signature |
|---|---|
| Appraiser Name  Jose Pinzon | Supervisory Appraiser Name |
| Company Name  Jose Pinzon Appraisals | Company Name |
| Company Address  16927 Septo St, North Hills, CA 91343 | Company Address |
| State License/Certification #  3000833   State  CA | State License/Certification #   State |
| Email Address  tonichi.pinzon@gmail.com | Email Address |

Freddie Mac Form 71   March 2009                    Page 1 of 1                    Fannie Mae Form 1004MC   March 2009

Form 1004MC2 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Property Profile

## Property Profile

| Property Location | | | | | | 1 2 3 4 |
|---|---|---|---|---|---|---|
| Address: | 10733 PINE AVE | City: | LYNWOOD | Zip: | | 90262-2328 |
| APN#: | 6192-022-002 | Use Code: | Single Family Residence | County: | | Los Angeles |

| Google Directions | Tract: 5103 | Census Tract: | 5401.01 | Zone: | LYR1* |
|---|---|---|---|---|---|
| Google Satellite | | | | | |

| Map Page/Grid: | 705/D6 | Legal Desc: | TRACT # S103 LOT COM N 713'24" E 50 FT FROM NE COR OF LOT 1 BLK B TR # 10269 TH S 8321'12" E 119.01 FT TH N 713' 24" E 35.01 FT TH N 3803'54" W 21.11 FT TH N 8321'12" W 104.01 FT TH S 7 LOT 7 |
|---|---|---|---|

| Total Assessed Value: | 359,000 | Tax Amount: | 4,990.21 |
|---|---|---|---|
| Percent Improvement: | 0.33 | Tax Year / Assessor Year: | 2016 / 2017 |

| Owner and Mailing Information | | | |
|---|---|---|---|
| Current Owner: | COBARRUBIAS,MERCEDES/VALDOVINOS,JOB & MADIVINA | Owner Address: | 10733 PINE AVE |
| City, State, Zip: | LYNWOOD, CA, 90262-2328 | Owner Occupied: | Yes |
| Last Transaction: | 10/15/2010 | Deed Type: | quitclaim/deed of trust |
| Amount: | | Document | 0001474900 |

| Last Sale Information | | View Foreclosure Data | View Deeds | Print Profile w/ Deeds |
|---|---|---|---|---|
| Transferred From: | MERCADO,JACOBO & JUANA Seller Address: | | | |
| Recording / Sale Date: | 06/23/2006 / 06/09/2006 | Prior Recording / Sale Date: | | 03/01/1999 / |
| Most Recent Sale Price: | 490,000 | Prior Sale Price: | | 144,500 |
| Document Number: | 0001382628 | Prior Document No.: | | 0000326077 |
| Document Type: | grant deed/deed of trust | Prior Document Type: | | high liability |

| Loan(s) Information | | | | |
|---|---|---|---|---|
| Lender: | | AFFILIATED FUNDING CORP | Full/Partial: | |
| Loan Amount / 2nd Trust Deed: | | 392,000 / 98,000 | Loan Type: | conventional variable |

| Physical Information | | | | | |
|---|---|---|---|---|---|
| Building Area: | 1,183 | # of Bedrooms: | 2 | Lot Size: sqft / acreage | 5,816 / 0.13 |
| Additional: | 0 | # of Bathrooms: | 1.00 | Year Built / Effective: | 1948 / 1948 |
| Garage: | | # of Stories: | 1 | Heating: | |
| First Floor: | | Total Rooms: | | Cooling: | |
| Second Floor: | 0 | # of Units: | 1 | Roof Type: | |
| Third Floor: | 0 | Garage/Carport: | Yes / | Construction/Quality: | Primary Material Unlisted / 0 |
| Basement Finished: | 0 | Fireplaces: | 0 | Building Shape: | |
| Basement Unfinished: | 0 | Pool/Spa: | No | View: | |

## Flood Data

| | |
|---|---|
| Flood Zone: | X |
| In SFHA: | False |
| NFIP Community Name: | CITY OF LYNWOOD |
| Participation Status: | True |
| Panel Number: | 06037C1820F |
| Panel Date: | 2008-09-26 |
| Community Number: | 060635 |
| Census Block: | 060375401013 |

**Repairs Estimate**

## SFR Property Repair Estimate Sheet

Client: **Ma Divina Valdovinos**
Street Address: 10733 Pine Ave
Lynwood, CA 90262

Date: 09/07/2017
Inspected by: **KF General Contractors  Lic # 972185**
2140 W Hollywood Way Burbank, CA 91510

| Inspection Checklist | Yes | No | Repair Cost |
|---|:---:|:---:|---:|
| 1. Chimney Need Repair/Replacement? | x | | $ 2,500.00 |
| 2. Roof Need Repair/Replacement? | x | | $ 15,000.00 |
| 3. Exterior Paint/Siding Need Repair/Replacement? | x | | $ 5,000.00 |
| 4. Windows Need Repair/Replacement? | | x | |
| 5. Exterior Doors Need Repair/Replacement? | x | | $ 2,000.00 |
| 6. Garage Need Repair/Replacement? | x | | $ 2,500.00 |
| 7. Driveway Need Repair/Replacement? | | x | |
| 8. Yard cleaned/landscaped? | | x | |
| 9. Fence Need Repair/Replacement? | x | | $ 5,500.00 |
| 10. Septic Need Repair/Replacement? | | x | |
| 11. Heating or furnaces Need Repair/Replacement? | | x | |
| 12. Plumbing Need Repair/Replacement? | | x | |
| 13. Electrical Need Repair/Replacement? | | x | |
| 14. Foundation Need Repair/Replacement? | x | | $ 1,500.00 |
| 15. Basement structure Need Repair/Replacement? | | x | |
| 16. Interior Doors Need Repair/Replacement | x | | $ 1,000.00 |
| 17. Closet Shelving | | x | |
| 18. Framing Need Repair/Replacement | | x | |
| 19. Interior Trim Need Repair/Replacement | | x | |
| 20. Need interior paint? | x | | $ 1,500.00 |
| 21. House need carpet? | | x | |
| 22. House need laminate/vinyl? | | x | |
| 23. House need tile? | | x | |
| 24. Floors need to be sanded/installed | | x | |
| 25. Kitchen Cabinets Need Repair/Replacement? | x | | $ 4,000.00 |
| 26. Insulation need replacement? | | x | |
| 27. Kitchen - need appliances? | | x | |
| 28. Bath Fixtures/accessories? | | x | |
| 29. Sheetrock Need Repair/Replacement? | | x | |
| 30. Dumpsters/Demo? | | x | |
| 31. Decks? | | x | |
| 32. Other:_____ | | | |
| 33. Miscellaneous | | | |
| **Total Repair Cost:** | | | **$ 40,500.00** |

## Aerial Map

| Client | Ma Divina Valdovinos | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10733 Pine Ave | | | | | | |
| City | Lynwood | County | Los Angeles | State | CA | Zip Code | 90262 |
| Owner | Cobarrubias, Valdovinos, & Valdovinos | | | | | | |



FHA/VA Case No.  | P.  | 2 of 26 |

## Plat Map

| Client | Ma Divina Valdovinos | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 10733 Pine Ave | | | | | |
| City | Lynwood | County | Los Angeles | State | CA | Zip Code 90262 |
| Owner | Cobarrubias, Valdovinos, & Valdovinos | | | | | |



## Building Sketch

| Client | Ma Divina Valdovinos | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10733 Pine Ave | | | | | | |
| City | Lynwood | | County | Los Angeles | | State CA | Zip Code 90262 |
| Owner | Cobarrubias, Valdovinos, & Valdovinos | | | | | | |





Sketch by Apex Sketch v5 Standard™

Comments.

### AREA CALCULATIONS SUMMARY

| Code | Description | Net Size | Net Totals |
|---|---|---|---|
| GLA1 | First Floor | 1183.00 | 1183.00 |
| GAR | Garage | 360.00 | 360.00 |
| P/P | Covered Porch | 80.00 | |
| | Enclosed Patio | 436.00 | 516.00 |

### LIVING AREA BREAKDOWN

| | Breakdown | | Subtotals |
|---|---|---|---|
| First Floor | | | |
| | 37.0 x | 29.0 | 1073.00 |
| | 10.0 x | 11.0 | 110.00 |

| Net LIVABLE Area | (rounded) | 1183 | 2 Items | (rounded) | 1183 |
|---|---|---|---|---|---|

Form SKT.BLDSKI - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

## Subject Photo Page

| Client | Ma Divina Valdovinos | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 10733 Pine Ave | | | | | |
| City | Lynwood | County | Los Angeles | State | CA | Zip Code | 90262 |
| Owner | Cobarrubias, Valdovinos, & Valdovinos | | | | | |



### Subject Front

**10733 Pine Ave**
| | |
|---|---|
| Sales Price | |
| Gross Living Area | 1,183 |
| Total Rooms | 5 |
| Total Bedrooms | 2 |
| Total Bathrooms | 2.0 |
| Location | Busy Road |
| View | Neighborhood |
| Site | 5,816 sf |
| Quality | Average |
| Age | 69 |



### Subject Rear



### Subject Street

## Photograph Addendum

| Client | Ma Divina Valdovinos | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 10733 Pine Ave | | | | | |
| City | Lynwood | County | Los Angeles | State | CA | Zip Code | 90262 |
| Owner | Cobarrubias, Valdovinos, & Valdovinos | | | | | |



**Opposite View of Subject Street**



**Address Verification**



**Side**



**Opposite Side**



**Adjacent Street**



**Opposite View of Adjacent Street**

## Photograph Addendum

| Client | Ma Divina Valdovinos | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 10733 Pine Ave | | | | | |
| City | Lynwood | County | Los Angeles | State | CA | Zip Code | 90262 |
| Owner | Cobarrubias, Valdovinos, & Valdovinos | | | | | |



**View Across Subject Street**



**View Across Adjacent Street**



**Garage**



**Garage Interior**



**Front Yard**



**Covered Porch**

## Photograph Addendum

| Client | Ma Divina Valdovinos | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 10733 Pine Ave | | | | | |
| City | Lynwood | County | Los Angeles | State | CA | Zip Code 90262 |
| Owner | Cobarrubias, Valdovinos, & Valdovinos | | | | | |



**Additional View of Subject Rear**



**View to the Rear**



**Living Room**



**Floor Heater**



**Dining Area**



**Kitchen**

## Photograph Addendum

| | | | | |
|---|---|---|---|---|
| Client | Ma Divina Valdovinos | | | |
| Property Address | 10733 Pine Ave | | | |
| City | Lynwood | County Los Angeles | State CA | Zip Code 90262 |
| Owner | Cobarrubias, Valdovinos, & Valdovinos | | | |




**Additional View of Kitchen**                          **Additional View of Kitchen**




**Laundry Area**                                        **Water Heater with 2 Straps**




**Unpermitted Bath**                            **Additional View of Unpermitted Bath**

## Photograph Addendum

| Client | Ma Divina Valdovinos | | | | | |
|--------|------|------|------|------|------|------|
| Property Address | 10738 Pine Ave | | | | | |
| City | Lynwood | County | Los Angeles | State | CA | Zip Code 90262 |
| Owner | Cobarrubias, Valdovinos, & Valdovinos | | | | | |



**Bedroom 1**



**Bedroom 2**



**Den (Used as Bedroom)**



**Bath**



**Smoke Alarm**



**Repair: Missing Ceiling Panels in Kitchen**

## Photograph Addendum

| Client | Ma Divina Valdovinos | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10733 Pine Ave | | | | | | |
| City | Lynwood | County | Los Angeles | State | CA | Zip Code | 90262 |
| Owner | Cobarrubias, Valdovinos, & Valdovinos | | | | | | |


**Repair: Tarp Covered Patio Roof**


**Repair: Damaged Eaves on Enclosed Patio**


**Repair: Damaged Section of Perimeter Fence**

**\*\*\*Intentionally Left Blank\*\*\***

**\*\*\*Intentionally Left Blank\*\*\***

**\*\*\*Intentionally Left Blank\*\*\***

## Location Map

| Client | Ma Divina Valdovinos | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10733 Pine Ave | | | | | | |
| City | Lynwood | County | Los Angeles | State | CA | Zip Code | 90262 |
| Owner | Cobarrubias, Valdovinos, & Valdovinos | | | | | | |



## Comparable Photo Page

| Client | Ma Divina Valdovinos | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 10733 Pine Ave | | | | | |
| City | Lynwood | County | Los Angeles | State | CA | Zip Code 90262 |
| Owner | Cobarrubias, Valdovinos, & Valdovinos | | | | | |



### Comparable 1

**10941 Lewis Rd**

| | |
|---|---|
| Prox. to Subject | 0.47 miles W |
| Sale Price | $343,000 |
| Gross Living Area | 1,298 |
| Total Rooms | 5 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.0 |
| Location | Commercial |
| View | Neighborhood |
| Site | 6,543 sf |
| Quality | Average |
| Age | 77 |



### Comparable 2

**3891 Walnut Ave**

| | |
|---|---|
| Prox. to Subject | 0.96 miles SW |
| Sale Price | $353,000 |
| Gross Living Area | 1,008 |
| Total Rooms | 5 |
| Total Bedrooms | 2 |
| Total Bathrooms | 1.0 |
| Location | Residential |
| View | Neighborhood |
| Site | 6,000 sf |
| Quality | Average |
| Age | 92 |



### Comparable 3

**10500 Rosewood Ave**

| | |
|---|---|
| Prox. to Subject | 0.21 miles NE |
| Sale Price | $350,000 |
| Gross Living Area | 1,380 |
| Total Rooms | 5 |
| Total Bedrooms | 2 |
| Total Bathrooms | 2.0 |
| Location | Residential |
| View | Neighborhood |
| Site | 5,228 sf |
| Quality | Average |
| Age | 77 |

## Comparable Photo Page

| Client | Ma Divina Valdovinos | | | | | | | |
|--------|------|--------|------|------|------|------|------|------|
| Property Address | 10733 Pine Ave | | | | | | | |
| City | Lynwood | | County | Los Angeles | | State | CA | Zip Code | 90262 |
| Owner | Cobarrubias, Valdovinos, & Valdovinos | | | | | | | |



### Comparable 4

**4655 Tweedy Blvd**

| | |
|---|---|
| Prox. to Subject | 0.60 miles N |
| Sale Price | $405,000 |
| Gross Living Area | 1,308 |
| Total Rooms | 5 |
| Total Bedrooms | 2 |
| Total Bathrooms | 1.0 |
| Location | Busy Road |
| View | Neighborhood |
| Site | 8,335 sf |
| Quality | Average |
| Age | 75 |



### Comparable 5

**3824 Lilita St**

| | |
|---|---|
| Prox. to Subject | 0.64 miles SW |
| Sale Price | $390,000 |
| Gross Living Area | 1,357 |
| Total Rooms | 5 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.0 |
| Location | Residential |
| View | Neighborhood |
| Site | 5,994 sf |
| Quality | Average |
| Age | 76 |

### Comparable 6

| | |
|---|---|
| Prox. to Subject | |
| Sale Price | |
| Gross Living Area | |
| Total Rooms | |
| Total Bedrooms | |
| Total Bathrooms | |
| Location | |
| View | |
| Site | |
| Quality | |
| Age | |



Business, Consumer Services & Housing Agency

# BUREAU OF REAL ESTATE APPRAISERS
# REAL ESTATE APPRAISER LICENSE

### Jose A. Pinzon

has successfully met the requirements for a license as a residential real estate appraiser in the State of California and is, therefore, entitled to use the title:

"Residential Real Estate Appraiser"

This license has been issued in accordance with the provisions of the Real Estate Appraisers' Licensing and Certification Law.

BREA APPRAISER IDENTIFICATION NUMBER:    3000833

Effective Date:    April 25, 2017
Date Expires:    April 24, 2019

Jim Martin, Bureau Chief, BREA

3034766

THIS DOCUMENT CONTAINS A TRUE WATERMARK - HOLD UP TO LIGHT TO SEE "CHAIN LINK"

Form SCNLGL - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE



**General Star National Insurance Company**
P O Box 10360 (Attn: GSN)
Stamford, Connecticut 06904

## REAL ESTATE APPRAISERS ERRORS & OMISSIONS INSURANCE POLICY

### DECLARATIONS PAGE

This is a claims made and reported policy. Please read this policy and all endorsements and attachments carefully.

Policy Number:  NJA936225D                          Renewal of Number:  NJA936225C

1. **NAMED INSURED:**    Jose A. Pinzon
   **STREET ADDRESS:**

   16927 Septo Street
   North Hills, CA 91343

2. **POLICY PERIOD:**    Inception Date:  04/29/2017            Expiration Date:  04/29/2018
   Effective 12:01 a.m. Standard Time at the address of the Named Insured.

3. **LIMITS OF LIABILITY:**
   Each Claim:  $1,000,000
   Aggregate:  $1,000,000
   Claim Expenses have a separate Limit of Liability:
   Each Claim:  $1,000,000
   Aggregate:  $1,000,000

4. **DEDUCTIBLE:**        Each Claim:  $ 0_____    Aggregate:  $ 0_____

5. **RETROACTIVE DATE:**  04/29/2013
   If a date is indicated, this policy will not provide coverage for any Claim arising out of any act, error,
   omission or personal injury which occurred before such date.

6. **ANNUAL PREMIUM:**              $697 00

   TOTAL Premium and Taxes/Surcharge      $697 00

7. **ENDORSEMENTS:**
   This policy is made and accepted subject to the printed policy form together with the following form(s) or
   endorsement(s).
   AP 00 0001 (06/11), AP 04 0001 (06/11), AP 21 0002 (06/11), AP 27 0004 (06/11), SGN 90 0001 (07/10), AP 01 0004CA (06/11),
   AP 08 0005CA (06/2011).

8. **PRODUCER NAME:**    Mercer Consumer
   **STREET ADDRESS:**    P. O. Box 8146
                          Des Moines, IA 50306-8146

_____
Authorized Representative

Producer Code: 26460                Class Code: 73128
Date:  04/19/2017
AP 10 0001 06 11    © Copyright 2011, General Star Management Company, Stamford, CT            Page 1 of 1

**Repairs Estimate**

**SFR Property Repair Estimate Sheet**

Client: Ma Divina Valdovinos                                       Date: 09/07/2017
Street Address: 10733 Pine Ave
Lynwood, CA 90262                      Inspected by: KF General Contractors  Lic # 972185
                                       2140 W Hollywood Way Burbank, CA 91510

| Inspection Checklist | Yes | No | Repair Cost |
|---|---|---|---|
| 1. Chimney Need Repair/Replacement? | x | | $ 2,500.00 |
| 2. Roof Need Repair/Replacement? | x | | $ 15,000.00 |
| 3. Exterior Paint/Siding Need Repair/Replacement? | x | | $ 5,000.00 |
| 4. Windows Need Repair/Replacement? | | x | |
| 5. Exterior Doors Need Repair/Replacement? | x | | $ 2,000.00 |
| 6. Garage Need Repair/Replacement? | x | | $ 2,500.00 |
| 7. Driveway Need Repair/Replacement? | | x | |
| 8. Yard cleaned/landscaped? | | x | |
| 9. Fence Need Repair/Replacement? | x | | $ 5,500.00 |
| 10. Septic Need Repair/Replacement? | | x | |
| 11. Heating or furnaces Need Repair/Replacement? | | x | |
| 12. Plumbing Need Repair/Replacement? | | x | |
| 13. Electrical Need Repair/Replacement? | | x | |
| 14. Foundation Need Repair/Replacement? | x | | $ 1,500.00 |
| 15. Basement structure Need Repair/Replacement? | | x | |
| 16. Interior Doors Need Repair/Replacement | x | | $ 1,000.00 |
| 17. Closet Shelving | | x | |
| 18. Framing Need Repair/Replacement | | x | |
| 19. Interior Trim Need Repair/Replacement | | x | |
| 20. Need interior paint? | x | | $ 1,500.00 |
| 21. House need carpet? | | x | |
| 22. House need laminate/vinyl? | | x | |
| 23. House need tile? | | x | |
| 24. Floors need to be sanded/installed | | x | |
| 25. Kitchen Cabinets Need Repair/Replacement? | x | | $ 4,000.00 |
| 26. Insulation need replacement? | | x | |
| 27. Kitchen - need appliances? | | x | |
| 28. Bath Fixtures/accessories? | | x | |
| 29. Sheetrock Need Repair/Replacement? | | x | |
| 30. Dumpsters/Demo? | | x | |
| 31. Decks? | | x | |
| 32. Other: | | | |
| 33. Miscellaneous | | | |
| **Total Repair Cost:** | | | $ 40,500.00 |

Exhibit F